ANTHONY HOLLOWAY *v.* COMMISSIONER
OF CORRECTION
(AC 22029)

Spear, Mihalakos and Bishop, Js.[1]

[1] This appeal was argued before a panel comprised of Judges Spear, Mihalakos and Bishop. Although Judge Spear agreed with the other judges

Submitted on briefs April 26—officially released September 10, 2002

*Raymond J. Rigat* filed a brief for the appellant (petitioner).

*Frederick W. Fawcett,* supervisory assistant state's attorney, filed a brief for the appellee (respondent).

*Opinion*

BISHOP, J. The petitioner, Anthony Holloway, appeals from the judgment of the habeas court dismissing his second amended petition for a writ of habeas corpus in which he claimed that he had been denied the effective assistance of appellate counsel. The petitioner

regarding the resolution of this appeal, he died before he had the opportunity to concur with the written decision. The parties stipulated, however, that they would not reargue the appeal to this court with a panel consisting of the original two judges and an additional judge. Rather, the parties stipulated that they would permit the remaining two judges alone to render a decision.

claims that the court improperly dismissed his claim that appellate counsel was ineffective because counsel failed to apprise our Supreme Court of the precedent of *Griffith* v. *Kentucky*, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987).[2] We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our disposition of the petitioner's appeal. The petitioner, who is African-American, was charged with one count of felony murder in violation of General Statutes § 53a-54c and was tried to the jury. During voir dire, the state used a peremptory challenge to remove an African-American venireperson. The petitioner challenged the removal as purposeful discrimination in violation of his equal protection rights as established in *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). In *Batson,* the United States Supreme Court held that the use of peremptory challenges by the state to strike venirepersons solely because they are members of the defendant's race violates the equal protection clause of the federal constitution. Id., 89. *Batson* established a three step procedure for the defendant in a criminal case to challenge the state's use of peremptory challenges to exclude jurors because of their race. Id., 96–98. First, the defendant must establish a prima facie case of discrimination by the state. Id., 96. The state then must proffer a neutral explanation for the peremptory challenge. Id., 97. Finally, the defendant must establish purposeful discrimination by the state. Id., 93. The court here concluded that because the peti-

---

[2] The petitioner also claimed that appellate counsel was ineffective because he failed (1) to brief properly the petitioner's claim under *Batson* v. *Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), regarding the state's use of a peremptory challenge to excuse a minority venireperson during jury selection and (2) to make an adequate record on appeal with respect to the *Batson* claim. The court dismissed those claims, and the petitioner does not challenge its ruling. We therefore limit our review to the *Griffith* claim.

tioner had failed to meet the first requirement of *Batson,* the state was not required to give a neutral explanation for its peremptory challenge. The petitioner was convicted and thereafter sentenced to a forty-five year term of imprisonment.

The petitioner's trial counsel also represented him in his direct appeal to our Supreme Court. See *State* v. *Holloway,* 209 Conn. 636, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). On appeal, he claimed that the trial court improperly concluded that he had failed to establish a prima facie case of purposeful discrimination relative to the state's use of the peremptory challenge to remove the African-American venireperson.[3] Id., 638. The court upheld the petitioner's conviction. Id., 652. The Supreme Court concluded that even though the trial court's analysis was incomplete, it was correct in determining that the petitioner had failed to establish a prima facie case of purposeful discrimination. Id., 642. Using its supervisory powers, however, the court held that in all future cases when a defendant asserts a *Batson* claim, it would be appropriate for the state to provide the court with a prima facie case response for excusing the venireperson, consistent with *Batson.* Id., 646.

On June 23, 1998, the petitioner filed petition for a writ of habeas corpus, which he amended on January 20, 2000. On October 17, 2000, he filed a second amended petition. The petitioner claimed that his appellate counsel was ineffective by failing to apprise our Supreme Court of the holding of *Griffith* v. *Kentucky,* supra, 479 U.S. 314. *Griffith* held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which

---

[3] For the petitioner's additional claims in his direct appeal, which are not relevant here, see *State* v. *Holloway,* supra, 209 Conn. 636.

the new rule constitutes a 'clear break' with the past." Id., 328. The petitioner specifically argued that if our Supreme Court had applied its supervisory authority retroactively, rather than prospectively, and ordered that the state comply with the second prong of *Batson*, the outcome of his direct appeal would have been different.

On May 30, 2001, the habeas court dismissed the petitioner's petition and rendered judgment in favor of the respondent commissioner of correction. The court stated that it presumed that our Supreme Court had been aware of the law, including precedents set by decisions of the United States Supreme Court. The habeas court concluded that it was not reasonably probable that the holding in *Griffith* would have produced a contrary result in the petitioner's direct appeal. On June 8, 2001, the habeas court granted the petitioner's petition for certification to appeal from its decision to this court.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 671, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court considered the proper standards for judging a criminal defendant's contention that the Constitution requires a conviction . . . be set aside because counsel's assistance at the trial . . . was ineffective. A claim of ineffective assistance of counsel has two components. First, the defendant must show that

counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. . . .

"To satisfy the first component, the petitioner must prove, under all of the circumstances existing at the time of the trial, that the representation fell below an objective standard of reasonableness, and he must also overcome the presumption that alleged ineffective assistance was not the result of sound trial strategy. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . . If the first prong is met, then the petitioner must prove that trial counsel's errors were such that they deprived the petitioner of a fair trial and that, but for the errors, the result of the trial would have been different. . . .

"The constitutional right of a criminal defendant to effective assistance of counsel also includes the right to such assistance on the defendant's first appeal as of right. . . . We have adopted the two-part *Strickland* analysis in the context of a claim of ineffective assistance of appellate counsel. . . . Thus, since [t]he purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding . . . that proceeding must be regarded as the entire

continuum of the adjudicatory process, both trial and appeal." (Citations omitted; internal quotation marks omitted.) *Crump* v. *Commissioner of Correction*, 68 Conn. App. 334, 336–38, 791 A.2d 628 (2002). "The test is not whether the issue, had it been raised on direct appeal, might have entitled the defendant to relief but whether the failure to raise the issue resulted in a miscarriage of justice." *Johnson* v. *Commissioner of Correction*, 34 Conn. App. 153, 163, 640 A.2d 1007, cert. denied, 229 Conn. 919, 644 A.2d 914 (1994).

In the petitioner's direct appeal, our Supreme Court modified the three step *Batson* procedural framework as it is used in Connecticut by relieving a defendant of the need to make an initial prima facie showing of discrimination. *State* v. *Holloway*, supra, 209 Conn. 645–46. Thus, a defendant in this state need only make a *Batson* objection to trigger the requirement that the state respond with a nondiscriminatory reason for excusing the proposed juror. Id.

The state argues that the petitioner's claim of ineffectiveness of counsel assumes that the rule announced in *Holloway* is constitutional in nature and not procedural. Our Supreme Court has specifically stated: "In exercising our supervisory power we have frequently given only prospective effect to changes strictly on policy considerations that do not carry constitutional implications. See, e.g., *Bennett* v. *Automobile Ins. Co. of Hartford*, 230 Conn. 795, 806, 646 A.2d 806 (1994); *State* v. *Patterson*, 230 Conn. 385, 397, 645 A.2d 535 (1994) [on appeal after remand, 236 Conn. 561, 674 A.2d 416 (1996)]; *State* v. *Holloway*, [supra, 209 Conn. 645–46]; *State* v. *Vilalastra*, 207 Conn. 35, 40, 540 A.2d 42 (1988)." (Internal quotation marks omitted.) *State* v. *Hines*, 243 Conn. 796, 814, 709 A.2d 522 (1998). The state argues that because our Supreme Court in *Hines* expressly cited *Holloway*, it is clear that its decision to require

that the state respond to a defendant's assertion of a *Batson* claim was a policy decision. We agree.

We therefore conclude that the alleged failure of the petitioner's counsel to apprise our Supreme Court of *Griffith* did not result in a miscarriage of justice and that the habeas court did not improperly dismiss the petitioner's petition. Because *Holloway* enunciated a procedural rule on the basis of policy rather than on constitutional considerations, we do not believe that counsel's reference to *Griffith* would have had any impact on the prospective application of that rule. Accordingly, we conclude that the petitioner was not deprived of his right to effective assistance of appellate counsel.

The judgment is affirmed.

In this opinion the other judges concurred.