STATE OF CONNECTICUT *v.* KENNETH LEMOINE, JR.
(11701)

Dupont, C. J., and Landau and Heiman, Js.

Submitted September 7—decision released November 7, 1995

*Paul T. Edwards*, special public defender, for the appellant (defendant).

*Marjorie Allen Dauster*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Maxine Wilesky*, assistant state's attorney, and *Trisha Morris*, law student intern, for the appellee (state).

HEIMAN, J. This matter is before us on remand from our Supreme Court. *State* v. *Lemoine*, 233 Conn. 502, 659 A.2d 1194 (1995). The defendant originally appealed to this court from the judgment of conviction, rendered after a jury trial, of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B),[1] risk of injury to a child in violation of General Statutes § 53-21,[2] and two counts of assault of a peace officer

---

[1] General Statutes § 53a-72a (a) provides in pertinent part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact . . . (B) by the threat of use of force against such other person or against a third person, which reasonably causes such other person to fear physical injury to himself or herself or a third person . . . ."

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

in violation of General Statutes (Rev. to 1991) § 53a-167c (a) (1).[3] *State* v. *Lemoine*, 33 Conn. App. 743, 744, 641 A.2d 131 (1994). In his original appeal to us, the defendant asserted that the trial court had improperly (1) denied his motions for a directed verdict and judgment of acquittal on the count of sexual assault in the third degree, (2) instructed the jury by failing to relate the issues of law to the facts of the case, and (3) instructed the jury on the crime of risk of injury to a child. Id. Concerning the defendant's first claim, we concluded that the trial court properly denied the defendant's motions for a directed verdict and judgment of acquittal because the evidence was sufficient to support the conviction of the defendant for the crime of sexual assault in the third degree. Id., 747–48A. We agreed with the defendant's second claim, however, that the trial court improperly failed to relate the issues of law to the facts of the case and on that ground reversed the judgment of the trial court. Id., 748A–54. Because we agreed with the defendant's second claim, we did not address the defendant's third claim that the trial court improperly instructed the jury as to the crime of risk of injury to a child. Id., 744, 744 n.4.

Our Supreme Court granted the state's petition for certification. *State* v. *Lemoine*, 230 Conn. 909, 644 A.2d 920 (1994).[4] The Supreme Court reversed this court and

[3] General Statutes (Rev. to 1991) § 53a-167c (a) provides in pertinent part: "A person is guilty of assault of a peace officer, fireman, employee of an emergency medical service organization or employee of the department of correction when, with intent to prevent a reasonably identifiable peace officer, fireman or employee of an emergency medical service organization, as defined in section 53a-3, or employee of the department of correction from performing his duty, and while such peace officer, fireman or employee is acting in the performance of his duties, (1) he causes physical injury to such peace officer, fireman or employee . . . ."

[4] The grant of certification was limited to the following issues:

"1. Did the Appellate Court properly conclude that the trial court had a constitutional obligation to refer to the facts relating to each charge in its jury instructions?

"2. Did the Appellate Court correctly order a new trial because the trial

remanded the case to us with direction to resolve the remaining issues on appeal.[5] *State* v. *Lemoine,* supra, 233 Conn. 516. The only remaining claim in this appeal is the defendant's third claim that the trial court improperly instructed the jury on the crime of risk of injury to a child. *State* v. *Lemoine,* supra, 33 Conn. App. 744 n.4. We are not persuaded that the jury instructions as to the crime of risk of injury to a child were improper. We therefore affirm the judgment of the trial court.

"The jury could reasonably have found the following facts. On June 20, 1991, the victim, his mother, the defendant, Barbara Tirado and her daughter went to a lake. The victim was eight years old at the time. After staying at the lake, they drove to the home of the defendant's mother, then to the home of his sister and then to Tirado's home located on Maple Street in Meriden. The victim's father later joined the group and the adults all began drinking. The victim fell asleep on the couch in Tirado's home wearing his pants, shirt and underpants. The victim's father was asleep on a chair near the couch and the victim's mother was asleep in another room. The victim awoke to find the defendant placing his hands between the victim's legs on the outside of the victim's pants. The defendant was attempting to pull down the victim's pants. The defendant was behind the victim on the couch and the victim was facing away from the defendant. The defendant told him to be quiet. The victim took off his pants while the defendant continued to touch the outside of the underpants between the legs and then the defendant cut the victim's underpants.

court did not relate the facts to each crime charged?" *State* v. *Lemoine,* supra, 230 Conn. 909.

[5] In its opinion remanding this matter to us, our Supreme Court states: "Because the Appellate Court agreed with the defendant's second claim, it did not reach the defendant's first and third claims." *State* v. *Lemoine,* supra, 233 Conn. 505 n.4. We did, however, in our first opinion, resolve both issues one and two, leaving unresolved only issue three. *State* v. *Lemoine,* supra, 33 Conn. App. 747–54.

The victim was scared and ran to his mother's room and told her what had just occurred.

"The victim's mother ran into the living room to wake the victim's father. In the meantime, the defendant, who was wearing only a tee shirt, ran down the stairs and out the backdoor. Tirado caught the defendant outside and asked him 'why he did it' and the defendant responded that he was sorry and the drugs made him do it. Tirado brought the defendant back upstairs. The victim's father and the defendant then fought while the victim's mother took off the victim's underpants and dressed him.[6] The victim then went downstairs with his parents and got into a van. The victim's father began to drive on Main Street in Meriden to the police station when he observed the defendant driving a truck with Tirado as a passenger on Maple Street. The victim's father blocked the defendant's vehicle and the two vehicles collided. The victim and his mother exited the van and proceeded to the side of the road.

"Officers Michael Merrigan, Mark Masse and Grant Treiber of the Meriden police department arrived at the scene in uniform shortly thereafter. Merrigan approached the father and was informed by him about the events that occurred at Tirado's home. Masse and Treiber approached the defendant's vehicle and asked him to exit it. As they attempted to open the door of the defendant's vehicle and take the keys, the defendant hit Treiber in the face and drove the vehicle in reverse. The officers at that point were hanging onto the doors of the vehicle. The truck veered to the right and almost hit a building on Maple Street. Treiber fell off the side of the truck and Masse hit a door attached to the building with sufficient force to break a hole in the door.

---

[6] The victim testified that his underwear was left in Tirado's bedroom. The victim's mother testified that she did not remember where the underwear was left.

Masse sustained lacerations to his right hand, right forearm, shoulder and back. Treiber sustained bruises and injured his right hand. Treiber then placed the defendant under arrest.

"At the crime scene, Robert Pocobello, a Meriden police detective, seized a pair of scissors and underpants. He discovered the scissors on a coffee table near the couch and the underpants on the couch. Pocobello processed the scissors for fingerprints. The processing revealed the presence of fingerprints that were not clear enough to be identified.

"Ted Standish, another Meriden police detective, employed by the department's sexual assault unit, interviewed the victim on June 21, 1991. The victim stated that after arriving at Tirado's home, she told him to sleep on the couch, where the defendant was already sleeping. The victim further told Standish that he awoke when the defendant placed his hands on the victim's 'dinky'[7] and that the defendant pulled at the victim's pants. The victim also told Standish that the defendant told the victim to take off his pants and keep quiet. The victim then told Standish that the defendant tried to make him take off his underpants and when he refused, the defendant cut the underpants with scissors.

"The defendant disputed the facts. He testified on his own behalf that he, the victim, Tirado and the victim's mother arrived at Tirado's home after they had spent the day at the lake. The defendant also testified that he left Tirado's at 11 p.m., just after the victim's father arrived, returned at around 4:30 or 5 a.m., and found Tirado and the victim's father drinking and the victim asleep on the couch. The defendant also stated that he fell asleep on the couch, 'opposite the victim' and awoke to find the victim's father with his hand in the pocket

---

[7] "Standish testified that the victim pointed to his penis when he used the word 'dinky.' " *State* v. *Lemoine*, supra, 33 Conn. App. 747 n.6.

of the defendant's pants, which the defendant had on, and thought that the victim's father was attempting to steal money. The defendant then testified that he tried to get up and that the victim's father jumped on him and hit him in the face. The defendant then testified that Tirado offered to drive him to the hospital and that he accepted Tirado's offer. He further testified that as Tirado drove him to the hospital, the victim's father forced their vehicle to a stop on Maple Street. The defendant then testified that he moved into the driver's seat, placed the truck in reverse and police officers tried to grab him, causing the truck to move in reverse." *State* v. *Lemoine*, supra, 33 Conn. App. 744–47.

In the only issue remaining to be resolved, the defendant asserts that the trial court improperly instructed the jury with respect to the law governing the crime of risk of injury to a child. We are unpersuaded. The defendant concedes that this issue was not properly preserved for review in the trial court, but seeks review under the well established principles of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). We will not again set out the four prongs of *Golding* that the defendant must satisfy in order to show entitlement to review. Id., 239–40.[8]

The following additional facts are necessary to the resolution of this appeal. In the third count of the long form information, the state charged the defendant with the crime of risk of injury to a child and alleged that "in the City of Meriden, on or about the 21st day of June, 1991, at or about 5:30 a.m., the said Kenneth Lemoine, Jr. did wilfully or unlawfully perform an act likely to impair the health or morals of a child, to wit: [D.N.], a minor, under the age of sixteen years, by caus-

---

[8] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

ing the removal or attempted removal of clothing from such a child, and rubbing the genital area of said child in violation of Section 53-21 of the Connecticut General Statutes." In its charge to the jury regarding the crime of risk of injury to a child, the trial court focused on the principle that the state had to establish three elements in order to prove the existence of the crime: "(1) that the victim was less than sixteen years of age, (2) that the defendant perpetrated an act upon the victim and (3) that this act was likely to be injurious to his health or morals. The acts prohibited are those acts that are directly perpetrated on the person of a minor and injurious to his health or moral well-being." The trial court then properly defined the terms health and impair.

The defendant asserts that the trial court, in its jury instructions, failed to limit explicitly the jury's inquiry to the specific acts alleged by the state in the third count of the information. The defendant claims that this failure unconstitutionally "enlarged" the crime with which the defendant had been charged. The trial court's instruction regarding the third count of the information, however, is not an instruction that implicates a constitutional violation as enumerated in our enlargement case law. The defendant's mere assertion that the jury instruction must be subjected to an enlargement analysis does not automatically mandate such an analysis. See *State* v. *Webb*, 37 Conn. App. 722, 730, 657 A.2d 711, cert. denied, 234 Conn. 915, 660 A.2d 357 (1995) (" '[r]obing garden variety claims of improper jury instructions concerning evidentiary matters in the majestic garb of constitutional claims does not make such claims constitutional in nature' "). Our enlargement cases involve claims that the trial court expanded the state's information by instructing the jury on statutory or factual alternatives not charged in the information. See, e.g., *State* v. *Scognamiglio*, 202 Conn. 18, 519 A.2d 607 (1987) (statutory alternative); *State* v. *Marra*,

222 Conn. 506, 610 A.2d 1113 (1992) (factual alternative). Enlargement cases are properly analyzed under the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. " 'The sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution guarantee a criminal defendant the right to be informed of the nature of the charge against him "with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise, and . . . to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense . . . ." *State* v. *Sumner*, 178 Conn. 163, 168, 422 A.2d 299 (1979); *State* v. *Roque*, 190 Conn. 143, 154, 460 A.2d 26 (1983).' *State* v. *Franko*, 199 Conn. 481, 490, 508 A.2d 22 (1986); *State* v. *Couture*, 194 Conn. 530, 560, 482 A.2d 300 (1984), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985)." *State* v. *Scognamiglio*, supra, 22. It is incumbent upon the defendant in an enlargement case to demonstrate that the trial court's charge caused him unfair surprise or prejudiced him in the preparation of his defense. Id.

Here, the trial court correctly set forth the elements of the crime of risk of injury, and did not expand the information by instructing the jury on a statutory or factual alternative not charged in the information. An unconstitutional enlargement is therefore not in issue. The instruction involved here is not the kind of instruction that we consider in the context of the test for enlargement to determine whether a constitutional violation exists that clearly deprived the defendant of a fair trial.

Although we conclude that no unconstitutional enlargement exists here, we will review the charge as a whole to determine if the charge deprived the defendant of a fair trial. "In reviewing a constitutional challenge to the trial court's instructions, we must consider

the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. *State* v. *Avila*, 223 Conn. 595, 607, 613 A.2d 731 (1992); *State* v. *Santangelo*, [205 Conn. 578, 595 n.11, 534 A.2d 1175 (1987)]; *State* v. *Ruiz*, 171 Conn. 264, 273, 368 A.2d 222 (1976). The test is whether the charge as a whole presents the case to the jury so that no injustice will result. . . . *State* v. *Utz*, 201 Conn. 190, 196–97, 513 A.2d 1191 (1986). . . . *State* v. *Campbell*, 225 Conn. 650, 661, 626 A.2d 287 (1993). We will reverse a conviction only if, in the context of the whole, there is a reasonable possibility that the jury was misled in reaching its verdict. *State* v. *Scognamiglio*, [supra, 202 Conn. 28]; *State* v. *Shannon*, 212 Conn. 387, 408, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989); *State* v. *Fleming*, 198 Conn. 255, 268–69, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986).

"A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . *State* v. *Usry*, 205 Conn. 298, 316, 533 A.2d 212 (1987); *State* v. *Sinclair*, 197 Conn. 574, 581, 500 A.2d 539 (1985); see *State* v. *Wood*, 208 Conn. 125, 132, 545 A.2d 1026, cert. denied, 488 U.S. 895, 109 S. Ct. 235, 102 L. Ed. 2d 225 (1988). An instruction that fails to satisfy these requirements would violate the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. *State* v. *Anderson*, 212 Conn. 31, 36, 561 A.2d 897 (1989); *State* v. *Foster*, 202 Conn. 520, 537, 522 A.2d 277 (1987); *State* v. *Fleming*, [supra, 198 Conn. 269–70]. . . . *State* v. *Avila*, supra, 223 Conn. 602–603.

"The test of a charge is whether it is correct in law, adapted to the issues and sufficient for the guidance of the jury. *Berniere* v. *Kripps*, 157 Conn. 356, 358, 254 A.2d 496 (1969); *State* v. *Bell*, 153 Conn. 540, 219 A.2d 218 (1966) . . . . The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. *Vita* v. *McLaughlin*, 158 Conn. 75, 77, 225 A.2d 848 (1969); *Worden* v. *Francis*, 153 Conn. 578, 579, 219 A.2d 442 (1966). . . . *State* v. *Sumner*, [178 Conn. 170]. The purpose of a charge is to call the attention of the members of the jury, unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a right decision in a particular case. *Shea* v. *Tousignant*, 172 Conn. 54, 59–60, 372 A.2d 151 (1976)." (Internal quotation marks omitted.) *State* v. *Lemoine*, supra, 233 Conn. 509–10.

Here, the defendant was charged in the state's long form information in nine separate counts. See id., 512–13. "After the close of evidence and immediately after the final arguments of counsel, the trial court instructed the jury as to the law applicable to all of the charges against the defendant. The court first instructed the jury on the general principles of law applicable to the case, such as reasonable doubt, direct evidence, circumstantial evidence and other principles typically contained in all criminal jury instructions. The court then instructed the jury accurately as to the elements the state must prove as to each crime charged in the information in order to convict the defendant." Id., 513.

We conclude that, in its charge to the jury, the trial court was not constitutionally obligated to articulate that the jury was limited in its consideration of the third count to the specific acts alleged by the state in its long form information. We are not persuaded that it was reasonably possible that the jury was misled by the trial court's failure to do so. "Moreover, the information, which the jury had with it during its deliberations,

clearly stated to which victim each of the nine counts pertained"; id., 514; and to which alleged acts of the defendant each of the nine counts pertained.

"In assessing whether a jury reasonably could have been misled by the court's instructions . . . it is always proper to consider whether the issues in the case are complicated." Id., 514–15. "In the present appeal, although the defendant was charged with nine separate counts in the information, the evidence related to those charges was not complicated and the charges arose from three separate and distinct incidents. The first three counts against the defendant all related to the minor victim and concerned the incident involving sexual conduct at Tirado's apartment. The two counts of reckless endangerment arose from the collision of the defendant's truck with the victim's father's van at the corner of Maple Street and Main Street in Meriden. The assault counts involved only the police officers. The three incidents were not similar. Moreover, the final arguments of counsel, delivered immediately prior to the court's instructions, thoroughly reviewed the testimony elicited from the witnesses." Id., 515–16.

"We conclude that the court's jury instructions, when examined as a whole and in the context of the entire trial, achieved their purpose of assisting the jury in applying the law. See *State* v. *Sumner*, supra, 178 Conn. 170–71. . . . We also conclude that it was not reasonably possible that the jury was misled by the trial court's instructions and that no injustice to the defendant resulted by reason of the court's instructions. See *Amato* v. *Sawicki*, 159 Conn. 490, 494, 271 A.2d 80 (1970). There was, therefore, no due process violation under either the state or the federal constitution." *State* v. *Lemoine*, supra, 233 Conn. 516.

The judgment is affirmed.

In this opinion the other judges concurred.