# KENNETH F. LEMOINE, JR. *v.* COMMISSIONER OF CORRECTION
## (AC 22114)

Mihalakos, Flynn and Hennessy, Js.

Argued September 11—officially released November 19, 2002

*Conrad Ost Seifert,* special public defender, for the appellant (petitioner).

*Toni M. Smith-Rosario,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Mary Elizabeth Baran,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

MIHALAKOS, J. The petitioner, Kenneth F. Lemoine, Jr., appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly found that his trial counsel and appellate counsel provided effective assistance. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. In June, 1992, a jury convicted the petitioner of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B), risk of injury to a child in violation of General Statutes § 53-21 and two counts of assault of a peace officer in violation of General Statutes § 53a-167c (a) (1).[1] The petitioner was acquitted of five addi-

[1] The details of the incident that led to the petitioner's conviction are set forth in *State* v. *Lemoine,* 33 Conn. App. 743, 641 A.2d 131 (1994), rev'd, 233 Conn. 502, 659 A.2d 1194, on appeal after remand, 39 Conn. App. 657, 666 A.2d 825 (1995), as follows. "On June 20, 1991, the victim, his mother, the [petitioner], Barbara Tirado and her daughter went to a lake. The victim was eight years old at the time. After staying at the lake, they drove to the home of the [petitioner's] mother, then to the home of his sister and then to Tirado's home located on Maple Street in Meriden. The victim's father later joined the group and the adults all began drinking. The victim fell

tional charges. He was sentenced to a total effective

asleep on the couch in Tirado's home wearing his pants, shirt and underpants. The victim's father was asleep on a chair near the couch and the victim's mother was asleep in another room. The victim awoke to find the [petitioner] placing his hands between the victim's legs on the outside of the victim's pants. The [petitioner] was attempting to pull down the victim's pants. The [petitioner] was behind the victim on the couch and the victim was facing away from the defendant. The [petitioner] told him to be quiet. The victim took off his pants while the [petitioner] continued to touch the outside of the underpants between the legs and then the [petitioner] cut the victim's underpants. The victim was scared and ran to his mother's room and told her what had just occurred.

"The victim's mother ran into the living room to wake the victim's father. In the meantime, the [petitioner], who was wearing only a tee shirt, ran down the stairs and out the backdoor. Tirado caught the [petitioner] outside and asked him 'why he did it' and the [petitioner] responded that he was sorry and the drugs made him do it. Tirado brought the [petitioner] back upstairs. The victim's father and the [petitioner] then fought while the victim's mother took off the victim's underpants and dressed him. The victim then went downstairs with his parents and got into a van. The victim's father began to drive on Main Street in Meriden to the police station when he observed the [petitioner] driving a truck with Tirado as a passenger on Maple Street. The victim's father blocked the [petitioner's] vehicle and the two vehicles collided. The victim and his mother exited the van and proceeded to the side of the road.

"Officers Michael Merrigan, Mark Masse and Grant Treiber of the Meriden police department arrived at the scene in uniform shortly thereafter. Merrigan approached the father and was informed by him about the events that occurred at Tirado's home. Masse and Treiber approached the [petitioner's] vehicle and asked him to exit it. As they attempted to open the door of the [petitioner's] vehicle and take the keys, the [petitioner] hit Treiber in the face and drove the vehicle in reverse. The officers at that point were hanging onto the doors of the vehicle. The truck veered to the right and almost hit a building on Maple Street. Treiber fell off the side of the truck and Masse hit a door attached to the building with sufficient force to break a hole in the door. Masse sustained lacerations to his right hand, right forearm, shoulder and back. Treiber sustained bruises and injured his right hand. Treiber then placed the [petitioner] under arrest.

"At the crime scene, Robert Pocobello, a Meriden police detective, seized a pair of scissors and underpants. He discovered the scissors on a coffee table near the couch and the underpants on the couch. Pocobello processed the scissors for fingerprints. The processing revealed the presence of fingerprints that were not clear enough to be identified.

"Ted Standish, another Meriden police detective, employed by the department's sexual assault unit, interviewed the victim on June 21, 1991. The victim stated that after arriving at Tirado's home, she told him to sleep on

term of fourteen years in prison. Thereafter, the petitioner appealed, and this court reversed the judgment of conviction and ordered a new trial. *State* v. *Lemoine*, 33 Conn. App. 743, 641 A.2d 131 (1994). Our Supreme Court granted the state certification to appeal, reversed this court's judgment and remanded the case for consideration of the petitioner's remaining appellate claim. *State* v. *Lemoine*, 233 Conn. 502, 659 A.2d 1194 (1995). This court thereafter affirmed the petitioner's conviction. *State* v. *Lemoine*, 39 Conn. App. 657, 666 A.2d 825 (1995).

On November 4, 1998, the petitioner filed a second amended petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel, ineffective assis-

the couch, where the [petitioner] was already sleeping. The victim further told Standish that he awoke when the [petitioner] placed his hands on the victim's 'dinky' and that the [petitioner] pulled at the victim's pants. The victim also told Standish that the [petitioner] told the victim to take off his pants and keep quiet. The victim then told Standish that the [petitioner] tried to make him take off his underpants and when he refused, the [petitioner] cut the underpants with scissors.

"The [petitioner] disputed the facts. He testified on his own behalf that he, the victim, Tirado and the victim's mother arrived at Tirado's home after they had spent the day at the lake. The [petitioner] also testified that he left Tirado's at 11 p.m., just after the victim's father arrived, returned at around 4:30 or 5 a.m., and found Tirado and the victim's father drinking and the victim asleep on the couch. The [petitioner] also stated that he fell asleep on the couch, 'opposite the victim' and awoke to find the victim's father with his hand in the pocket of the [petitioner's] pants, which the [petitioner] had on, and thought that the victim's father was attempting to steal money. The [petitioner] then testified that he tried to get up and that the victim's father jumped on him and hit him in the face. The [petitioner] then testified that Tirado offered to drive him to the hospital and that he accepted Tirado's offer. He further testified that as Tirado drove him to the hospital, the victim's father forced their vehicle to a stop on Maple Street. The [petitioner] then testified that he moved into the driver's seat, placed the truck in reverse and police officers tried to grab him, causing the truck to move in reverse." Id., 744–47. In addition, "[t]he victim testified that his underwear was left in Tirado's bedroom. The victim's mother testified that she did not remember where the underwear was left." Id., 745 n.5. Furthermore, "Standish testified that the victim pointed to his penis when he used the word 'dinky.' " Id., 747 n.6.

tance of appellate counsel and actual innocence.[2] Following an evidentiary hearing, at which the court reviewed the trial transcripts and records, and heard from the petitioner's previous attorneys, the court rendered a thorough memorandum of decision denying the petition. The petitioner thereafter requested certification to appeal, which the court granted. The petitioner then filed the present appeal.

The petitioner asserts that the court improperly determined that his trial counsel and appellate counsel provided effective assistance. The petitioner asserts that trial counsel neglected (1) to request a contemporaneous limiting instruction regarding constancy of accusation testimony, (2) to challenge the constancy of accusation testimony, (3) to challenge the court's jury instructions regarding constancy of accusation evidence, (4) to contest the court's jury instructions regarding the charge of sexual assault in the third degree and (5) to object to certain allegedly inappropriate statements made by the prosecutor during closing argument to the jury. In addition, the petitioner contends that appellate counsel failed to challenge (1) the unpreserved jury instructions regarding the charge of sexual assault in the third degree and (2) the unpreserved prosecutorial misconduct claims, which purportedly occurred during the prosecutor's closing argument.

Before addressing each of the petitioner's claims, we begin our analysis with the appropriate standard of review. A court "is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed

---

[2] In his appeal to this court, the petitioner has abandoned his claim of actual innocence.

question of law and fact, which is subject to plenary review." (Citation omitted.) *Duperry* v. *Solnit*, 261 Conn. 309, 335, 803 A.2d 287 (2002).

"A criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution." (Citation omitted; internal quotation marks omitted.) *Crump* v. *Commissioner of Correction*, 61 Conn. App. 55, 58–59, 762 A.2d 491 (2000).

The standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), in which "the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . .

"The first component of the *Strickland* test, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. . . . In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court,

examining counsel's defense, after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . .[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. . . .

"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Therefore, [a] habeas court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if the claim may be disposed of on the ground of an insufficient showing of prejudice." (Citation omitted; internal quotation marks omitted.) *Doehrer* v. *Commissioner of Correction*, 68 Conn. App. 774, 777–79, 795 A.2d 548, cert. denied, 260 Conn. 924, 797 A.2d 520 (2002); *Crump* v. *Commissioner of Correction*, 68 Conn. App. 334, 337–38, 791 A.2d 628 (2002).

Furthermore, "[w]e have [also] adopted the two-part *Strickland* analysis in the context of a claim of ineffective assistance of appellate counsel." (Internal quotation marks omitted.) *Crump* v. *Commissioner of Correction*, supra, 68 Conn. App. 337; see *Holloway* v.

*Commissioner of Correction*, 72 Conn. App. 244, 249, 804 A.2d 995, cert. denied, 261 Conn. 944, 808 A.2d 1136 (2002).

The petitioner claims that he was denied the effective assistance of counsel in violation of his federal and state constitutional rights. In its memorandum of decision, the court focused largely on the deficient performance element of the *Strickland* test and concluded that it had not been satisfied. Regardless, the petitioner would not have prevailed because he could not have satisfied the second prong of the *Strickland* test.

The petitioner first asserts that his trial counsel should have requested a contemporaneous limiting instruction regarding the constancy of accusation testimony. As the habeas court correctly stated, although it is acceptable for a trial court, in its discretion, to give a contemporaneous limiting instruction to the jury, there is no rule of practice or statutory requirement that the court must give such an instruction contemporaneously with the introduction of such testimony. See *State* v. *Bethea*, 24 Conn. App. 13, 21, 585 A.2d 1235, cert. denied, 218 Conn. 901, 588 A.2d 1076 (1991). Thus, it was not improper for trial counsel not to request a different charge and not to object to the charge given by the trial court. Furthermore, the habeas court found that the trial court had charged the jury properly by instructing that the constancy of accusation evidence was to be admitted solely to corroborate the victim's testimony. We agree with the habeas court's findings. See id.; see generally *State* v. *Wild*, 43 Conn. App. 458, 465, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996).

Second, the petitioner asserts that trial counsel was ineffective in challenging the constancy of accusation evidence and jury instructions regarding the same. The habeas court noted that trial counsel had objected to

each constancy of accusation witness who was presented and took exception to each witness' testimony. The court held that there was adequate evidence in the record to demonstrate that those witnesses remembered speaking with the victim and that the trial court had charged the jury properly on how that evidence should be considered. The habeas court found that although the trial court in its charge had used the term "they," "[i]t [was] clear in reading the charge that 'they' refers to the statement of the victim as given to the constancy witnesses as concerns whether each of these several out-of-court statements, ('they'), were consistent with the victim's recollection of what happened."

"The test of a charge is whether it is correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *State* v. *Lemoine*, supra, 233 Conn. 510. This court is satisfied that the evidence supports the habeas court's conclusion that there is no indication that the jury was misled or confused by the instructions. Therefore, we agree with the habeas court that both the admission of the testimony and the jury charge were proper. See *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996) (en banc); *State* v. *Williams*, 65 Conn. App. 449, 463–65, 783 A.2d 53, cert. denied, 258 Conn. 927, 783 A.2d 1032 (2001).

Nonetheless, even if this court had found that trial counsel should have objected to the jury charge, the petitioner would still fail to satisfy the second prong of the *Strickland* test. The habeas court found, and we agree, that the petitioner did not establish a reasonable probability that, absent counsel's allegedly unprofessional errors, the result of the proceedings would have been different. See *Bunkley* v. *Commissioner of Correction*, 222 Conn. 444, 454–55, 610 A.2d 598 (1992).

The petitioner further argues that both his trial counsel and appellate counsel should have challenged the

jury charge regarding sexual assault in the third degree, § 53a-72a (a) (1) (B),[3] and insisted that the court define the term "compels." The petitioner felt disadvantaged by the charge that was given because he believed it unfairly deemphasized the element of compulsion. Taking into consideration that a trial court must instruct a jury on every essential element of a criminal charge, that does not imply that the court must define those words that have an ordinary meaning in the English language. See *State* v. *George B.*, 258 Conn. 779, 800, 785 A.2d 573 (2001). The trial court charged the jury, without objection, in accordance with the clear language of the statute. Furthermore, the habeas court found that the jury was read the statute two additional times and that it never asked for any further definition of the word "compelled" or seemed confused by the instructions. That is significant because the jury asked for clarifications of other portions of the charge. "The jury is presumed to [have followed] the court's directions in the absence of a clear indication to the contrary." (Internal quotation marks omitted.) *State* v. *Austin*, 244 Conn. 226, 242, 710 A.2d 732 (1998). We agree with the habeas court that trial counsel did not act improperly by not objecting to or requesting a new charge, and appellate counsel did not act improperly by not raising those claims on appeal. Again, even if this court had found that "compels" should have been defined, the petitioner failed to establish a reasonable probability that absent counsel's allegedly unprofessional errors, the result of the proceedings would have been different. In short, the petitioner has not shown

---

[3] General Statutes (Rev. to 1991) § 53a-72a (a) provides in relevant part: "A person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact (A) by the use of force against such other person or a third person, or (B) by the threat of use of force against such other person or against a third person, which reasonably causes such person to fear physical injury to such person or a third person . . . ."

the prejudice, arising out of his attorneys' performances, that *Strickland* requires.

Finally, the petitioner also faults his trial counsel and appellate counsel for not objecting to and challenging the state's improper closing arguments. The petitioner claims that the prosecutor argued matters that were outside the evidence, improperly argued matters pertaining to psychology and psychological traits that were for the jury to consider objectively from the evidence, and referred to constancy of accusation testimony as substantive evidence. We recognize, as did the habeas court, that the petitioner must establish that "as a whole" the trial was unfair and that the misconduct "so infected the trial with unfairness" that the conviction denied him due process. See *State* v. *Alexander*, 254 Conn. 290, 303, 755 A.2d 868 (2000). Although the habeas court held that there were specific instances of prosecutorial misconduct, that court further reasoned that there was no substantial prejudice and no reasonable probability that the outcome of the case would have been any different. This court agrees that even if some of the challenged statements were improper, the incidents were cured by the court's instructions to the jury. See *State* v. *Wickes*, 72 Conn. App. 380, 399–400, 805 A.2d 142 (2002). Furthermore, the strength of the state's case was significant, and this court would have to agree that the fairness of the trial, as a whole, is apparent. See id.

In the present case, the habeas court, in a well reasoned memorandum of decision, found that the petitioner had failed to meet his burden of satisfying either prong of the *Strickland* test. This court cannot conclude that those factual findings are clearly erroneous. After a thorough review of the record and briefs, we conclude that the petitioner has failed to overcome the presumption that the performance of his trial counsel and appellate counsel fell within the wide range of reasonable

professional assistance or that, but for their perfor-
mance, the result would have been different. The habeas
court, therefore, properly determined that the petitioner
had failed to satisfy his burden of establishing that
either trial counsel or appellate counsel provided inef-
fective assistance.

The judgment is affirmed.

In this opinion the other judges concurred.