STATE OF CONNECTICUT *v.* SIGFREDO DEJESUS
(AC 24176)

Lavery, C. J., and Schaller and Stoughton Js.

Argued January 10—officially released October 25, 2005

*Adele V. Patterson*, assistant public defender, for the appellant (defendant).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Cornelius P. Kelly*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Sigfredo DeJesus, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a). On appeal, the defendant claims that the trial court improperly instructed the jury on the conspiracy to commit murder charge by failing to define properly the essential elements of the crime.[1] We reverse, in part, the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The state charged the defendant in a substitute information with murder in violation of General Statutes § 53a-54a (a), attempt to commit murder in violation of General

---

[1] The defendant also makes what is essentially an "enlargement claim"—that the court improperly instructed the jury on the conspiracy charge in a manner that permitted the jury to convict him of an offense with which he was not charged. See *State* v. *Lemoine*, 39 Conn. App. 657, 664–65, 666 A.2d 825 (1995). Because we conclude that reversal of the judgment is warranted on a different claim, we need not address that issue.

Statutes §§ 53a-49 and 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), and conspiracy to attempt to commit murder in violation of General Statutes §§ 53a-48, 53a-49 and 53a-54a (a). The state also charged Xavier Rivera, Kelvin Sanchez, Wilfredo Fernandez and Jose Vasquez with the same counts. The cases were joined and all five defendants were tried together.[2] The jury found the defendant guilty of attempt to commit murder and conspiracy to commit murder.[3]

The jury reasonably could have found the following facts. During the late afternoon of October 8, 1999, the victim, Cesar Rivera, and Luis Romero were driving a red Ford Explorer around Bridgeport. During the evening, they picked up additional passengers and planned to go to a nightclub. At approximately 11 p.m., while Romero was driving along Park Terrace, they encountered a taxicab that had stopped in the street, blocking their way. Romero, who had smoked the drug PCP that day, became agitated and demanded that the taxicab driver "[g]et the fuck out of the way." Romero caused a disturbance on the street by yelling, swearing and sounding the vehicle's horn during the exchange with the taxicab driver. When the taxicab finally moved out of the way, Romero continued along the street where Xavier Rivera was in the process of parking a car. Romero then addressed Xavier Rivera, stating, "Yeah, I'm talking to you, too." An argument ensued between Romero and Xavier Rivera. Several people who had been sitting on the porch of a residence entered the

[2] The court subsequently acquitted Vasquez of all counts, and acquitted Sanchez and Fernandez of the first and second counts. The court also dismissed the fourth count against all the defendants. The jury found Rivera guilty of attempt to commit murder and conspiracy to commit murder. The jury also found Sanchez guilty of conspiracy to commit murder. After the jury failed to reach a verdict as to Fernandez, the court declared a mistrial.

[3] The defendant has not raised any claims with respect to his conviction of attempt to commit murder.

street and began yelling at Romero during the incident. Someone threw a forty ounce beer bottle, shattering the rear window of the Explorer. Seconds later, someone in the street fired five gunshots. One bullet hit the rear of the Explorer as Romero drove away. Prior to that incident, the defendant, Sanchez and Fernandez had been seen on the porch of a residence located on the street.

Shortly after that incident, at approximately 11:30 p.m., the victim's sister, Leticia Rivera, was approached by Sanchez and Fernandez as she left her apartment in Marina Village, a housing project in Bridgeport. Sanchez questioned her regarding her brother's whereabouts, explaining that the victim had been with "his boy" who had been "talking shit . . . ." Sanchez stated, "[W]e're not having that shit." Leticia Rivera then saw Sanchez holding a gun. When she entered her apartment to try to page the victim, Sanchez and Fernandez followed her inside. Later, she drove around the area, but failed to find the victim.

Yamil Lopez, who also lived at Marina Village, testified that at approximately 11:30 p.m., she heard Xavier Rivera knock on the door of a nearby residence. When Vasquez answered the door, Xavier Rivera told him that he had argued with "Cesar's boy" and that he and his "boys" were going to wait for the victim. Lopez also testified that at approximately 12:30 a.m. on the morning of October 9, 1999, she heard cars approach in front of her residence and recognized the voices of the defendant, Xavier Rivera, Sanchez and Fernandez. She heard both the defendant and Xavier Rivera say, "[L]et's go to Cesar's mother's house." The victim lived with his mother in another residence in Marina Village. Lopez heard the group walking around her building and then saw all four of them walking on a path between the buildings. She then heard Sanchez say, "[N]o, I already spoke to his sister. Let's just wait in front of the build-

ing." Lopez testified that after two or three minutes, the group returned to the front of the building and that she heard them talking, screaming and throwing bottles for sixty to ninety minutes. She then heard the voices of the defendant, Xavier Rivera, Sanchez and Fernandez "calling and screaming," and saying things like, "[T]here they go," and, "[C]ome here." When a car approached, Lopez heard the defendant say, "[G]et out of the car." She then heard several gunshots.

Romero testified that after the incident on Park Terrace, he drove the Explorer to a club. Later, he and the victim left the other members of their party and drove around. At approximately 2:40 a.m. on the morning of October 9, 1999, the victim drove the Explorer to Marina Village. When they arrived, between three and five people approached the vehicle, and one of them tried to pull the victim out of the driver's side window. From the passenger side, Romero managed to reach the gear shift to shift the Explorer in reverse and to step on the accelerator. As soon as the vehicle started moving, one or more persons fired several gunshots. The vehicle traveled into the street, over the median and came to a stop on the opposite side of the street in front of a row of stores. Both Romero and the victim exited the vehicle, Romero from the passenger side, and the victim from the driver's side. As Romero ran away, he heard more gunshots. Later, while hiding in a construction site, he saw a dark vehicle pass by and then a man on foot with a gun.

Joseph Szor, a Bridgeport police officer working as a private guard at a nearby construction site, radioed police dispatch to report gunshots. Ninety seconds after hearing the gunshots, Szor saw a dark vehicle leaving the area at a high rate of speed. Szor and other police officers who had been dispatched to the scene found the Explorer that the victim and Romero had been driving. The windows were shattered, the transmission was

locked in reverse and bullet holes were evident. The officers also found the body of the victim lying next to a dumpster outside one of the stores. It later was determined that the victim had died from bullet wounds. Police officers investigating the incident found physical evidence indicating that a total of twenty-eight bullets had been fired from three different firearms. Additional facts will be set forth as necessary.

The defendant claims that the court improperly instructed the jury on the conspiracy to commit murder charge by failing to define properly the essential elements of the crime. Specifically, the defendant contends that the court's instruction failed to define the specific intent element adequately because it did not identify the victim, Cesar Rivera, as the person who was alleged to be the intended object of the conspiracy. We agree.

The defendant did not object to the court's charge or raise his claim at trial and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4] Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id.; see also *State* v. *Whitford*, 260 Conn. 610, 621, 799 A.2d 1034 (2002) (first two prongs of *Golding* involve determination of whether claim reviewable; second two

[4] The defendant also requests review under the plain error doctrine, codified in Practice Book § 60-5. We decline to afford the defendant such review because we are affording review and relief pursuant to *Golding*.

involve determination of whether defendant may prevail). We will review the defendant's claim because the record is adequate for review and because a claim of instructional error regarding the failure to instruct properly on each element of a crime is of constitutional magnitude alleging the violation of a fundamental right. See *State* v. *Aponte*, 259 Conn. 512, 516–17, 790 A.2d 457 (2002) (applying *Golding* review to claim that defendant's due process rights were violated when court improperly instructed jury on specific intent element of conspiracy to commit murder).

The following additional facts are relevant to the defendant's claim. The state charged the defendant in a four count substitute information, which can be summarized as follows:[5] The first count charged the defendant with the murder of Cesar Rivera. The second count charged the defendant with the attempted murder of Romero. The third count charged the defendant with conspiracy to commit murder. The fourth count charged the defendant with "conspiracy to attempted

[5] In the first paragraph of the July, 2002 substitute information, the state charged the defendant with the crime of murder and alleged that the defendant, "with intent to cause the death of one Cesar Rivera, did shoot and cause the death of the said Cesar Rivera . . . ." The second paragraph charged the defendant "with the crime of criminal attempt to commit murder and" alleged that the defendant, "with intent to cause the death of one Luis Romero, did attempt to shoot and cause the death of the said Luis Romero . . . ." The third paragraph charged the defendant "with the crime of conspiracy to commit murder and" alleged that the defendant, "with intent that conduct constituting the crime of Murder . . . agreed with one or more persons to engage in or cause the performance of such conduct, and there was committed one or more overt acts in pursuance of such conspiracy . . . ." The fourth paragraph charged the defendant "with the crime of conspiracy to attempted commit murder" and alleged that the defendant, "with intent that conduct constituting the crime of Attempted Murder . . . agreed with one or more persons to engage in or cause the performance of such conduct, and there was committed one or more overt acts in pursuance of such conspiracy . . . ." The subsequent substitute information dated October, 2002, did not include the charge contained in the fourth paragraph.

commit murder." Neither the third nor the fourth counts specifically identified any intended victim of the conspiracy to commit murder.

After the state presented its evidence, the court heard arguments related to motions for a judgment of acquittal filed by all the defendants. The court, the prosecutor and counsel for each of the five defendants engaged in a discussion over the course of two days regarding the four counts and the various theories of criminal liability being pursued by the state. The relevant portions of that discussion can be summarized as follows. Counsel for each defendant argued that the fourth count, conspiracy to attempt to commit murder, should be dismissed because it did not charge a crime recognized in our state. The prosecutor agreed to withdraw that count, but argued that under the theory of liability set forth in *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946),[6] the jury could still find liability for murder and attempt to commit murder if it found that a conspiracy to commit murder existed. Responding to the concern that the state was trying to use a conspiracy theory to extend *Pinkerton* liability for the attempted murder of Romero to all of the defendants without there being an underlying conspiracy charge as to Romero in a separate count, the prosecutor countered that the existing conspiracy to commit murder count could be used. The prosecutor then inquired about the possibility of amending the information, stating, "I'm not sure if the court would allow the state to amend the information to add the name of Luis Romero to the conspiracy to commit mur-

---

[6] See *Pinkerton* v. *United States*, supra, 328 U.S. 647–48. "Under the *Pinkerton* doctrine . . . a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy." (Citation omitted; internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 484, 853 A.2d 478 (2004).

der count." The court stated that it would not allow the information to be amended because it would be a substantial change.[7] The following day, the court ruled that it would not instruct the jury on the *Pinkerton* theory of liability because there was "no specific evidence" that the murder or the attempted murder were committed by any of the coconspirators. The court also ruled on the motions for a judgment of acquittal.[8] The state subsequently filed the operative substitute information against the defendant, charging only the remaining three counts.

During the state's closing argument to the jury, the prosecutor explained the third count, conspiracy to commit murder, in general terms without arguing whether it related to an agreement to murder Cesar Rivera or an agreement to murder Romero. Counsel for Sanchez was the only defense counsel to contend that the state was required to prove an intent to cause the death of Cesar Rivera.

When it instructed the jury on the third count, the court did not specifically identify Cesar Rivera as the alleged intended victim of the conspiracy to commit murder. The court instructed that "the state must prove the following elements [of conspiracy to commit murder] beyond a reasonable doubt. First, that there was an agreement between the defendant and one or more persons to engage in conduct constituting a crime, in this case the crime of murder. Second, that there was an overt act in furtherance of the subject of the

---

[7] Practice Book § 36-18 provides: "After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

[8] The court acquitted each of the defendants of the fourth count, acquitted Vasquez of all the remaining counts, and acquitted Sanchez and Fernandez of the first and second counts.

agreement by any one of those persons. Third, that there was the intent on the part of the defendant that conduct constituting the crime, in this case the crime of murder, be performed. This necessitates, therefore, that I define for you the crime of murder, which I have already done and . . . you are to . . . apply that same definition here."

The court gave further instructions on the specific intent element: "To prove the offense of conspiracy to commit murder, the state must prove two distinct elements of intent. First, that the person intended to agree and, second, that they intended to cause the death of another person." The court also instructed that "[t]he defendant may not be found guilty unless the state has proven beyond a reasonable doubt that he had the specific intent to violate the law when he entered into the agreement to engage in conduct constituting the crime of murder." Finally, the court instructed that "the state has to prove beyond a reasonable doubt . . . that there was intent on the part of the defendant that conduct constituting the crime of murder be performed, specifically conduct which has as its intent the death of another person."

We also set forth the relevant portions of the court's instruction on the murder count because in its instruction on the conspiracy charge, the court referred to the definition of murder that it had previously given. We also set forth the murder and attempted murder instructions because both referred to specific individuals— Cesar Rivera and Romero—when instructing on the "intent to cause the death of another person" element of each offense.

Regarding the murder charge, which was limited to accessorial liability,[9] the court instructed that "[a] per-

---

[9] The state had conceded that it could not prove which of the defendants had acted as a principal in the murder of Cesar Rivera.

son is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or a third person. For you to find that someone murdered Cesar Rivera, the state must prove the following elements beyond a reasonable doubt. One, that someone intended to cause the death of another person and, two, that in accordance with that intent, that someone caused the death of that person or a third person. For you to find that someone murdered Cesar Rivera . . . [t]he state must prove beyond a reasonable doubt that someone caused [his] death . . . with the specific intent to cause the death. . . . [T]he intent necessary to find someone guilty of murder is a specific intent to cause the death of the victim."

Regarding the attempted murder charge, the court instructed the jury on the essential elements of the crime, stating that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for a commission of the crime, he intentionally does or omits to do anything which . . . constitut[es] a substantial step in a course of conduct planned to culminate in his commission of the crime [of murder]. The intent for the crime of murder in this count is a specific intent to cause the death of Luis Romero. And acting with that intention, he attempted to cause the death of the said Luis Romero. The first element the state must prove beyond a reasonable doubt is that someone had the kind of mental state required for the commission of the crime of murder as I've gone over that intent with you in my discussion of the first count."

The defendant's argument that the court should have specifically identified Cesar Rivera as the intended victim of the charge of conspiracy to commit murder is premised on the notion that the third count charged only a conspiracy to murder Cesar Rivera. Although the defendant concedes that the language of the third count did not limit the charge to Cesar Rivera, he con-

tends that the symmetrical structure of the initial four count information demonstrates that the third count charged only a conspiracy to murder Cesar Rivera. The defendant contends that the third count pertained to the murder charge contained in the first count, which specifically identified Cesar Rivera as the person the defendant had murdered. Similarly, the defendant contends that although the fourth count did not specifically identify an intended victim of the "conspiracy to commit attempted murder," it pertained to the attempted murder charge contained in the second count, which specifically identified Romero as the person the defendant had attempted to murder. In addition, the defendant argues that the request of the prosecutor to add Romero's name to the conspiracy to commit murder count amounted to a concession that the third count had charged the defendant only with conspiracy to murder Cesar Rivera. The defendant further argues that this concession and the court's denial of the request on the ground that adding Romero's name would be a substantial change demonstrates that the conspiracy to commit murder count pertained to only Cesar Rivera.

When determining the scope of charges contained in an information, we construe the information liberally in favor of the state. *State* v. *McMurray*, 217 Conn. 243, 250, 585 A.2d 677 (1991) (construing information liberally when reviewing claim that information failed to charge all essential elements of offense). "[A] conviction based upon a challenged information is valid unless the information is so obviously defective that by no reasonable construction can it be said to charge the offense for which conviction was had." (Internal quotation marks omitted.) Id.

The state argues that the third count charged a conspiracy to commit the murder of both Cesar Rivera and Romero. If we were to construe the third count in isolation we might agree with the state. Examining the

information in its entirety, however, we conclude that the third count charged only a conspiracy to commit the murder of Cesar Rivera. An examination of the structure of an information is relevant to determining the charges and theories of liability for which a defendant had notice. See *State* v. *Torres*, 47 Conn. App. 205, 213, 703 A.2d 1164 (1997) (on basis of five count information in which state explicitly named alleged victim in all but one count, defendant reasonably believed that "another person" language in that count referred to specific victim). We agree with the defendant that the symmetrical structure of the state's initial four count information demonstrates that the third count charged only a conspiracy to murder Cesar Rivera.

The defendant contends that after the fourth count, conspiracy to commit attempted murder, was dismissed, there was no longer any conspiracy count that related to Romero and that "the information lost the symmetry, which might otherwise have led the jury to the necessary conclusion that count three related only to Cesar Rivera." Therefore, the defendant argues that it was improper for the court to define the specific intent element as the intent that "conduct constituting the crime of murder be performed, specifically conduct which has as its intent the death of another person." Rather, the defendant argues that under the circumstances of this case, the court should have instructed that the conspiracy to commit murder charge required proof beyond a reasonable doubt that the defendant specifically intended to cause the death of Cesar Rivera. Absent such an instruction, the defendant argues that the jury was misled.

We now identify the applicable standard of review and set forth the legal principles that guide our resolution of the defendant's claim. "The principal function of a jury charge is to assist the [jurors] in applying the law correctly to the facts which they might find to be

established . . . and therefore, we have stated that a charge must go beyond a bare statement of accurate legal principles to the extent of indicating to the jury the application of those principles to the facts claimed to have been proven. . . .

"When reviewing the challenged jury instruction, however, we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts." (Internal quotation marks omitted.) *State* v. *Davis*, 261 Conn. 553, 563–564, 804 A.2d 781 (2002). "[A] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Davis*, 76 Conn. App. 653, 677, 820 A.2d 1122 (2003); see also *State* v. *Coltherst*, 263 Conn. 478, 490, 820 A.2d 1024 (2003).

"[A]n accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Hinton*, 227 Conn. 301, 308, 630 A.2d 593 (1993). "It is . . . constitutionally axiomatic that the jury be instructed on the essential elements of a crime charged. . . . The due process clause of the fourteenth amend-

ment protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. . . . [T]he failure to instruct a jury on an element of a crime deprives a defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Citations omitted; internal quotation marks omitted.) *State* v. *Denby*, 235 Conn. 477, 483–84, 668 A.2d 682 (1995). "Jury instructions must provide jurors with a clear understanding of the elements of the crime charged, and [afford] them proper guidance for their determination of whether those elements were present." (Internal quotation marks omitted.) *State* v. *Toth*, 29 Conn. App. 843, 858, 618 A.2d 536, cert. denied, 225 Conn. 908, 621 A.2d 291 (1993).

"[A] challenged jury instruction constitutes a clear constitutional violation that clearly deprives a defendant of a fair trial if it is found reasonably possible that the jury was misled by the court's instruction." (Internal quotation marks omitted.) *State* v. *Pereira*, 72 Conn. App. 545, 573–74, 805 A.2d 787 (2002), cert. denied, 262 Conn. 931, 815 A.2d 135 (2003). "An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled." (Internal quotation marks omitted.) *State* v. *Gallichio*, 71 Conn. App. 179, 184, 800 A.2d 1261 (2002).

"[A] jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was *uncontested and supported by overwhelming evidence,* such that the jury verdict would have been the same absent the error." (Emphasis in original; internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 738, 759 A.2d 995 (2000), citing *Neder* v. *United States*, 527 U.S. 1,

17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); see also *State* v. *Vazquez*, 87 Conn. App. 792, 796, 867 A.2d 15, cert. denied, 273 Conn. 934, 875 A.2d 544 (2005).

The essential elements for the crime of conspiracy are well established. General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy." "Conspiracy is a specific intent crime, with the intent divided into two elements: (a) the intent to agree or conspire and (b) the intent to commit the offense which is the object of the conspiracy." (Internal quotation marks omitted.) *State* v. *Beccia*, 199 Conn. 1, 3–4, 505 A.2d 683 (1986). Thus, "[p]roof of a conspiracy to commit a specific offense requires proof that the conspirators *intended* to bring about the elements of the conspired offense." (Emphasis in original; internal quotation marks omitted.) Id., 5. "To prove the offense of conspiracy to commit murder, the state must prove two distinct elements of intent: that the conspirators intended to agree; and that they intended to cause the death of another person." *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521 (1992).

In this case, the court's instructions on the elements of the crime of conspiracy to commit murder provided the jury with an accurate statement of the applicable legal principles. Under the unique circumstances of this case, however, the court's instructions should have gone "beyond a bare statement of accurate legal principles . . . ." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 261 Conn. 563. The court's instructions failed to assist the jury in its application of the essential elements of the crime to the facts that the state was required to prove in order to obtain a conviction for the offense that it had charged. As discussed, the con-

spiracy to commit murder charge was limited to a conspiracy to murder Cesar Rivera. The court's instructions, therefore, should have indicated to the jury that the state was required to prove the essential elements of the crime of conspiracy to commit murder as they pertained to Cesar Rivera. The court's instructions were improper because they were not adapted to the specific intent issue the jury was required to decide, i.e., whether the state had proven beyond a reasonable doubt that the defendant had intended to agree to murder Cesar Rivera and had intended to cause the death of Cesar Rivera.

The circumstances of this case required more than a bare statement of the elements of conspiracy to commit murder. The jury heard evidence over the course of several days against five defendants who had each been charged in an information containing four separate charges, including murder, attempted murder and conspiracy to commit murder. On the basis of the state's presentation of the case, it would have been clear to the jury that Cesar Rivera was the alleged victim of the murder charge and that Romero was the alleged object of the attempted murder charge. It would not, however, have been clear to the jury that Cesar Rivera was the alleged object of the conspiracy to commit murder charge. We conclude that under the circumstances of this case, the court's instruction on the essential elements of the crime of conspiracy to commit murder was insufficient to guide the jury.

In addition, the court's instructions on both the murder and attempted murder charges specifically identified the respective individuals whom the state was required to prove the defendant had a specific intent to murder—Cesar Rivera and Romero. When it instructed the jury on the conspiracy charge, the court stated that "the state has to prove beyond a reasonable

doubt . . . that there was intent on the part of the defendant that conduct constituting the crime of murder be performed, specifically, conduct which has as its intent the death of another person." By not indicating that the conspiracy charge required the state to prove that the defendant intended to cause the death of Cesar Rivera, it was reasonably possible that the jury was misled into thinking that the state could meet its burden if it proved that the defendant had intended to murder *either* Cesar Rivera or Romero.

Under the circumstances of this case, failing to instruct the jury that the state was required to prove that the defendant had the intent to cause the death of Cesar Rivera was the equivalent of omitting an essential element from the charge. Furthermore, we conclude that the improper instruction does not constitute harmless error because the evidence that the defendant intended to cause the death of Cesar Rivera was not uncontested, nor was it overwhelming such that the jury's verdict would have been the same absent the error. See *State* v. *Montgomery*, supra, 254 Conn. 738. The defendant contested the evidence when he moved for a judgment of acquittal on the conspiracy charge, arguing that there was insufficient evidence to establish that he had formed any agreement to murder Cesar Rivera or that he had intended to cause the death of Cesar Rivera. In addition, the state's evidence against the defendant was not overwhelming. Rather, the case against the defendant was based largely on a series of inferences.

The judgment is reversed only as to the conviction of conspiracy to commit murder and the case is remanded for a new trial on that count only. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.