## STATE OF CONNECTICUT *v.* MARSHALL BROWN
## (AC 27111)

Gruendel, Harper and Peters, Js.

Argued May 26—officially released October 10, 2006

*William B. Westcott*, special public defender, for the appellant (defendant).

*Melissa Streeto Brechlin*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Donna Mambrino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. The defendant, Marshall Brown, appeals from the judgment of conviction, rendered after a jury trial, of two counts of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (1) and 53a-54a, two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and carrying a pistol without a permit in violation of General Statutes § 29-35 (a).[1] On appeal, the defendant claims that (1) the information charging him with two counts of attempt to commit murder and two counts of kidnapping was duplicitous, and (2) the trial court improperly instructed the jury on the element of intent. We affirm the judgment of the trial court.

---

[1] The court sentenced the defendant to a total effective term of thirty-six years imprisonment.

The jury reasonably could have found the following facts. The defendant met Pauline Lindo in 1992. They dated for several months in 1992 and resumed their relationship in 1997. In May, 2001, however, Lindo ended the relationship and told the defendant that she was dating someone else. The defendant responded negatively to Lindo's decision and told her that he did not want to break up. He called her home frequently and began stopping by her house to wait for her to return from work.

On June 4, 2001, the defendant quit his job as a result of being reprimanded by his boss. After leaving work, he withdrew $800 from a bank and went to Sigourney Street in Hartford, where he purchased a Raven .25 caliber semiautomatic handgun from a man he knew from the neighborhood. Before the defendant left, the man loaded the gun with six rounds and instructed the defendant on how to use it.

At approximately 11:30 a.m., the defendant proceeded to a health care center in Manchester where Lindo was working as a certified nurse's assistant. He approached her in the dining room of the facility as she was serving lunch to the patients. Lindo told the defendant that he would have to wait to speak with her until after her shift ended. At about the same time, Wanda Dawe, the charge nurse at the facility, asked Lindo to take a patient to a hospital. Upon hearing this request, the defendant pulled a gun out from behind his back and put it to Lindo's head. He grabbed her and pulled the trigger, but the gun did not fire.[2] The defendant flipped a switch on the gun and pulled the trigger several more times, but the gun still did not fire. Lindo pleaded with the defendant to leave the dining room and to stop pulling the trigger on the gun. The

---

[2] Testing by the Manchester police department later revealed that the gun had a faulty firing pin.

defendant grabbed Lindo by the shirt and pulled her into a nurses' station nearby. While in the nurses' station, the defendant struggled with Lindo and continued to pull the trigger of the gun. Although the gun made a clicking noise each time that the defendant pulled the trigger, it did not fire a gunshot.

In the meantime, several of Lindo's coworkers tried to come to her aid. Maxine Cosgrove, a cook and dietary aide, heard Lindo yelling from the nurses' station. She approached the room and told the defendant to leave Lindo alone. As he continued to struggle with Lindo, the defendant turned and pointed the gun at Cosgrove. Cosgrove ran to the next office and called 911. Joanne Thulin, a nurse supervisor at the facility, and Dawe also tried to assist Lindo. While Thulin was attending to a patient, she heard that there was a fight in the nurses' station and immediately went to find out what was happening. She saw the defendant and Lindo struggling and then noticed that the defendant was holding a gun. When she saw the gun, she backed out of the room and ran to another part of the facility where she called 911. Dawe also heard that there was an altercation in the nurses' station between the defendant and Lindo. She ran to help Lindo, but as she entered the room, the defendant pointed the gun at her and then raised it above his head. She ran out of the building with Thulin and called the police.

In addition, Benny Ingenito, a maintenance worker at the facility, entered the building as these events were unfolding. He walked past the nurses' station and saw the defendant and Lindo struggling. Ingenito stopped in front of the door, at which point the defendant pointed the gun toward him. Ingenito backed away and left the building. Donna Hennessey, another charge nurse, also tried to assist Lindo. She was serving lunch to a patient when she heard a loud commotion coming from the dining room area. As she approached the

nurses' station, Hennessey saw the defendant beating Lindo. Hennessey entered the room and pulled the defendant away from Lindo. The defendant grabbed Hennessey by the neck and put the gun to her head, pulling the trigger twice. Again, the gun failed to fire, although it made the same clicking noise that Lindo heard before. Hennessey wrestled herself away from the defendant and ran down the hall to call the police.

After Hennessey escaped, Lindo twisted the defendant's arm, causing him to drop the gun. She kicked it to Hennessey, who had returned to help her, and Hennessey picked it up and ran out of the room. The defendant tried to chase her, but Lindo pushed him to the floor. He stood up and ran out the back door of the facility. He got into his car and quickly drove toward the exit of the parking lot, where he was stopped by the police. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly denied his motion for a bill of particulars because the substitute information was duplicitous, thereby depriving him of his constitutional right to fair notice of the charges against him in violation of the sixth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[3] More particularly, the defendant argues that the substitute information was duplicitous because it did not specify the names of the alleged victims of attempt to commit murder or kidnapping. We disagree.

[3] The defendant invokes both the federal and state constitutions in support of his claim. We note, however, that the defendant has failed to provide us with an independent analysis of his claim under the Connecticut constitution. "We have repeatedly apprised litigants that we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue." (Internal quotation marks omitted.) *State* v. *Sinvil*, 270 Conn. 516, 518 n.1, 853 A.2d 105 (2004). We therefore confine our analysis to the relevant federal constitutional claim.

The following additional facts are relevant to our review. On November 12, 2002, the defendant filed a motion for a bill of particulars requesting, inter alia, information concerning the specific nature of the offense or offenses with which he was charged and the name or names of all persons who the state claimed were involved in the crimes that the defendant allegedly committed. On November 25, 2003, the state filed a substitute information, which identified the charges against the defendant, the relevant statutory provisions, as well as the date and location where the crimes allegedly occurred. The substitute information did not specify the victims of the attempt to commit murder or kidnapping counts. The defendant did not request additional information until closing arguments had concluded on January 5, 2004. At that time, the defendant again sought a bill of particulars. The purpose of that request, however, was to preserve the defendant's argument that the jury should be charged that the crime of threatening is a lesser included offense of the crime of attempt to commit murder. The court denied the defendant's request, stating that even if the court were to order the state to file a bill of particulars, the substitute information already provided all of the information that was required, namely, the date, time and place of the crime charged.

Because the defendant's basis for filing a motion for a bill of particulars on January 5, 2004, was not related to his claim that the information was duplicitous, his present claim was not submitted to the trial court for its determination. As a result, the defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[4] We will review the claim because the record is adequate and the claim is of constitutional magnitude.

[4] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of

Before addressing the merits of the defendant's claim, it is important to clarify the defendant's argument and identify what he is not arguing. Specifically, the defendant is not arguing that the substitute information violated the duplicity doctrine as it traditionally has been delineated. That doctrine recognizes that when a single count of a complaint charges two or more offenses, the information may be duplicitous if it implicates several important policy considerations. *State* v. *Browne*, 84 Conn. App. 351, 381, 854 A.2d 13, cert. denied, 271 Conn. 931, 859 A.2d 930 (2004). Those considerations include "avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution." (Internal quotation marks omitted.) Id.

The defendant concedes, as he must, that each count of the substitute information identified a single crime. He argues instead that the policy considerations underlying the duplicity doctrine are implicated in this case because "the defendant was charged with two counts each of attempted murder and kidnapping under circumstances where any one of six witnesses who testified at trial could satisfy the requirements of the charge." Consequently, the defendant argues, it is impossible to ensure that the jury unanimously agreed that he was guilty of attempt to commit murder and kidnapping with respect to the same two individuals. He further argues that there is no way to assure that

a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

the protection against double jeopardy has been afforded by the verdict because the substitute information was unclear as to who were the victims. The defendant, therefore, contends that the substitute information in this case was effectively duplicitous because it caused prejudice to him similar to that caused by an information that alleges more than one offense in a single count.

Even if we were to assume arguendo that the substitute information in the present case was duplicitous because the failure to identify the victims of the attempt to commit murder and kidnapping charges implicated the policy considerations underlying that doctrine, we are not persuaded that the defendant is able to meet the high burden that he bears in demonstrating that he was prejudiced by a duplicitous information. Pursuant to Practice Book § 41-10, "No information shall be dismissed merely for misjoinder of parties accused, misjoinder of offenses charged, multiplicity, duplicity or uncertainty, provided an offense is charged." Practice Book § 41-11 further provides in relevant part that "[n]o appeal . . . based on any of the defects enumerated in Section 41-10 shall be sustained unless it is affirmatively shown that the defendant was, in fact, prejudiced in his . . . defense upon the merits and that substantial injustice was done to the defendant because of such defect." See *State* v. *Markham*, 12 Conn. App. 306, 310–13, 530 A.2d 660 (1987).

As we already have noted, the substitute information identified the charges against the defendant, the relevant statutory provisions, and the date and location where the crimes allegedly occurred. Although the victims of the charges relating to attempt to commit murder and kidnapping were not identified, the defendant concedes that he is not claiming that he was unaware of the charges against him or that he did not comprehend the state's theory of prosecution, including the fact

that the state specifically believed that he attempted to murder Lindo and Hennessey. Moreover, the defendant testified at trial that he did not kidnap or attempt to murder *anyone*. He claimed, instead, that Lindo instigated the entire ordeal at the health care facility and that she pulled a gun on him. Whether the state provided the names of the victims of the attempted murder and kidnapping counts in a bill of particulars, therefore, did not prejudice the defense theory that the defendant was actually the victim of Lindo's criminal actions.

Likewise, we are not convinced that the defendant suffered substantial injustice as a result of the absence of the victims' names in the substitute information. The evidence presented at trial demonstrated that the defendant put a gun to Lindo's head and pulled the trigger numerous times. He grabbed her and dragged her to the nurses' station, where a struggle ensued. In addition, Hennessey testified that, upon seeing the struggle in the nurses station, she pulled the defendant off of Lindo. The defendant then grabbed her by the neck and pointed the gun at her head, at which time he pulled the trigger twice. With respect to the other witnesses who the defendant claims could have been considered the victims of the crimes of kidnapping or attempt to commit murder, there was no evidence that he had any physical interaction with any of them or that he did anything more than point the gun at them from a distance. In addition, the state in its closing argument consistently referred to Lindo and Hennessey as the victims of kidnapping and attempted murder.

On the basis of the record before us, we conclude that the defendant's argument on appeal cannot be sustained because he has not demonstrated that he was prejudiced in his defense on the merits or that he suffered substantial injustice. See Practice Book § 41-11. The defendant, therefore, has failed to establish that the alleged constitutional violation clearly exists and

clearly deprived him of a fair trial, and his claim must fail under the third prong of *Golding*.

## II

The defendant next claims that the court improperly instructed the jury on the essential element of intent. Specifically, the defendant claims that the court's charge, which referred to both types of statutory intent as defined by General Statutes § 53a-3 (11), allowed the jury to find him guilty of the specific intent crimes of attempt to commit murder and kidnapping on the basis of an intent to engage in conduct rather than an intent to cause the required specific result.[5] We disagree.

With respect to the general concept of intent, the court instructed the jury that "[i]ntent relates to the condition of the mind of the person who commits the act, his purpose, his intent in doing it. Intentional conduct is purposeful conduct rather than conduct which is accidental or inadvertent. As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result *or to engage in such conduct*. Now, what a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to come into court and testify that he looked into another's mind and saw therein a certain intent, a certain purpose or intention to do harm to another or a certain knowledge regarding conduct of a particular circumstance. The only way in which the jury can ordinarily determine what a person's purpose or intention or knowledge was at any given time, aside from the person's own statements or testimony, is by

---

[5] General Statutes § 53a-3 (11) provides: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

determining what a person's conduct was and what the circumstances were surrounding that conduct and from that infer what his purpose or intention or knowledge was. . . .

"Intent to kill someone or inflict physical injury *or to do any act* can be formed instantaneously or it can be formed over time. It does not require any specific period of time for thought or malice aforethought or premeditation for its formation, although that, too, may be present. As stated, a specific intent can be formed instantaneously or it can be formed over time. A person's intention may be inferred from his conduct. *You may infer from the fact that the accused engaged in conduct that he intended to engage in that conduct.* The inference is not a necessary one; that is, you're not required to infer intent from the accused's conduct, but it is an inference that you may draw if you find it is a reasonable and logical inference." (Emphasis added.)

Because the defendant's claim was not preserved at trial, he seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, and the plain error doctrine.[6] See Practice Book § 60-5. We review this claim under *Golding* because the defendant has raised a claim of instructional error regarding the elements of an offense, which is a claim of constitutional magnitude; see *State* v. *Morales*, 84 Conn. App. 283, 300, 853 A.2d 532, cert. denied, 271 Conn. 928, 859 A.2d 584 (2004); and the record is adequate for our review.

"When reviewing a challenged jury instruction, [i]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury

---

[6] In light of our analysis under *Golding*, we likewise conclude that plain error review is not warranted because the defendant has not demonstrated that he suffered manifest injustice. See *State* v. *Martinez*, 95 Conn. App. 162, 170 n.5, 896 A.2d 109, cert. denied, 279 Conn. 902, 901 A.2d 1224 (2006).

[was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled . . . the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) *State* v. *Santiago*, 87 Conn. App. 754, 759–60, 867 A.2d 138, cert. denied, 273 Conn. 938, 875 A.2d 45 (2005).

"It is axiomatic that the definition of intent as provided in § 53a-3 (11) embraces both the specific intent to cause a result and the general intent to engage in proscribed conduct. It has become axiomatic, through decisional law, that it is improper for a court to refer in its instruction to the entire definitional language of § 53a-3 (11), including the intent to engage in conduct, when the charge relates to a crime requiring only the intent to cause a specific result. *State* v. *Sivak*, 84 Conn. App. 105, 110, 852 A.2d 812, cert. denied, 271 Conn. 916, 859 A.2d 573 (2004).

"This court has further noted, however, that in cases in which the entire definition of intent was improperly read to the jury, the conviction of the crime requiring specific intent almost always has been upheld because a proper intent instruction was also given. The erroneous instruction, therefore, was not harmful beyond a reasonable doubt. See id., 111; cf. *State* v. *Francis*, 246 Conn. 339, 358–59, 717 A.2d 696 (1998); *State* v. *Austin*, 244 Conn. 226, 232, 710 A.2d 732 (1998); *State* v. *Prioleau*, 235 Conn. 274, 322, 664 A.2d 743 (1995)." (Internal

quotation marks omitted.) *State* v. *Leggett*, 94 Conn. App. 392, 411–12, 892 A.2d 1000, cert. denied, 278 Conn. 911, 899 A.2d 39 (2006).

Although the court improperly instructed the jury on the entire definitional language of § 53a-3 (11), it properly instructed that to find the defendant guilty of attempt to commit murder, the jury had to find that the defendant intended to cause the death of another person. The court further instructed the jury that to find the defendant guilty of kidnapping, it had to find that he intended to abduct and to restrain a person. The court repeated these proper instructions multiple times during its charge.

We do not discern any difference between the charge in this case and the instructions that were upheld by our Supreme Court in *State* v. *Prioleau*, supra, 235 Conn. 322, *State* v. *Francis*, supra, 246 Conn. 358–59, and *State* v. *Austin*, supra, 244 Conn. 235–37. In each of those cases, the court concluded that it was not reasonably possible that the jury was misled by a reference to the entire statutory definition of intent because the trial court also had instructed the jury on the specific intent required to convict the defendant of murder. Similarly, we conclude that because the court properly instructed the jury on specific intent within the context of its instructions on the specific charges, it was not reasonably possible that the jury was misled by the court's instruction in this case. Because the defendant has failed to establish that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial, this claim also fails under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other judges concurred.