ALISON BARLOW *v.* COMMISSIONER
OF CORRECTION
(AC 31861)

Gruendel, Bear and Schaller, Js.

Argued May 24—officially released August 30, 2011

*Naomi Fetterman,* with whom, on the brief, was *Aaron J. Romano,* for the appellant (petitioner).

*John A. East III,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* former

state's attorney, and *John J. Davenport*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, Alison Barlow, appeals following the habeas court's denial of his petition for certification to appeal from the judgment denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion when it denied his petition for certification to appeal and improperly rejected his claim that his appellate counsel had provided ineffective assistance. More specifically, the petitioner argues that his appellate counsel's performance was deficient because she failed to raise claims that the trial court improperly instructed the jury (1) by giving an incorrect definition of intent and (2) by failing to include the necessary elements of the charged criminal offenses. We dismiss the appeal.

The following facts and procedural history are relevant to the resolution of the petitioner's appeal. On January 9, 1997, the petitioner and two acquaintances rented a Geo Tracker vehicle and drove to a grocery store on Willow Street in Waterbury, where the petitioner intended to retaliate against several unidentified persons who had attempted to kill him. Shortly thereafter, two people, Joel Mercado and Naomi Williams, were wounded and hospitalized as a result of gunshots fired from the Geo Tracker. During a search of the area, detectives found thirteen shell casings; ten were .22 caliber, and three were ten millimeter. The police investigation led them to the residence of Demetrice Chapman, the mother of the petitioner's daughter. While interviewing Chapman, two officers encountered the petitioner and arrested him on charges unrelated to the present appeal. After obtaining a search warrant, the police searched his Thunderbird and recovered a ten

millimeter Colt pistol with its serial number obliterated. They subsequently determined that three ten millimeter shell casings found at the crime scene were from that pistol. The petitioner was charged with offenses related to the shooting.

In 1998, following a jury trial, the petitioner was convicted of attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a, two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and alteration of a firearm identification number in violation of General Statutes § 29-36. The court sentenced the petitioner to a prison term of thirty-five years. The petitioner, represented by attorney Lori Welch-Rubin, unsuccessfully appealed his conviction. See *State* v. *Barlow*, 70 Conn. App. 232, 797 A.2d 605, cert. denied, 261 Conn. 929, 806 A.2d 1067 (2002).

On September 14, 2009, the petitioner filed his second amended petition for a writ of habeas corpus, alleging the ineffective assistance of Welch-Rubin. After trial, the habeas court issued a memorandum of decision on December 7, 2009, denying the petition for a writ of habeas corpus. The habeas court concluded that the petitioner had failed to establish either deficient performance or prejudice with respect to his counsel's decision not to raise any claims with respect to the trial court's jury instructions. On December 18, 2009, the habeas court denied his petition for certification to appeal.

"We begin by setting forth the applicable standard of review. Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*,

229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"We examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Earl G.* v. *Commissioner of Correction*, 106 Conn. App. 758, 760–61, 943 A.2d 1118, cert. denied, 288 Conn. 901, 952 A.2d 809 (2008).

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner]

must show that the deficient performance prejudiced the defense."[1] (Internal quotation marks omitted.) *McClam* v. *Commissioner of Correction*, 98 Conn. App. 432, 436, 909 A.2d 72 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007). "A reviewing court need not address both components of the inquiry if the [petitioner] makes an insufficient showing on one." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 89 Conn. App. 134, 139, 871 A.2d 1103, cert. denied, 275 Conn. 909, 882 A.2d 676 (2005).

With this standard in mind, we review the petitioner's first claim that Welch-Rubin's performance was deficient because she failed to raise, as an issue in his direct appeal, the trial court's improper jury instruction with respect to intent. The record reflects that the trial court initially charged the jury on both specific and general intent.[2] Because the charged offenses were all specific

---

[1] In determining whether a petitioner has satisfied the prejudice prong in cases involving claims of ineffective assistance of appellate counsel, the question is whether there is a reasonable probability that but for the error of counsel, the petitioner would have prevailed on his appeal. *Small* v. *Commissioner of Correction*, 286 Conn. 707, 717–28, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

[2] The trial court's initial instruction to the jury provided in relevant part: "All of the five counts today essentially have the element of intent. These are not accidental things that are done. Let me tell you what intent is, and this will apply to all five charges, five counts. Intent relates to the condition of the mind of a person who commits the act, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result or to conduct when his conscious objective is to cause such result *or to engage in such conduct.*" (Emphasis added.) The court read the entire statutory definition of intent contained in General Statutes § 53a-3 (11), including the language "to engage in such conduct," even though that portion of the statute is inapplicable to a specific intent crime. See *State* v. *Prioleau*, 235 Conn. 274, 321–22, 664 A.2d 743 (1995); *State* v. *DeBarros*, 58 Conn. App. 673, 682–84, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000). "It has become axiomatic, through decisional law, that it is improper for a court to refer in its instruction to the entire definitional language of § 53a-3 (11), including the intent to engage in conduct, when the charge relates to a crime requiring only the intent to cause a specific result." (Internal quotation marks omitted.) *State* v. *Brown*, 97 Conn. App. 837, 848, 907 A.2d 118, cert. denied, 280 Conn. 944, 912 A.2d 477 (2006).

intent crimes, the petitioner claims that the court's reading of the entire statutory definition of intent, which included language applicable only to general intent crimes, was improper and confused the jury. He argues that he "likely [would] have received a reversal of his conviction or a new trial" if Welch-Rubin had raised this issue in his direct appeal.

After reciting applicable case law, the habeas court noted that it had reviewed all of the jury instructions. According to the habeas court, the trial court had read the improper instruction to the jury once as part of a general definition of intent and then referred back to the improper instruction once during the remainder of the charge. It also determined, however, that the trial court had given the proper instruction on specific intent numerous times when instructing the jury as to the elements of each charged offense. Furthermore, when the trial court referred back to the improper instruction, it had instructed the jury properly on the requisite specific intent for the assault charges immediately before and immediately after that reference. Given the foregoing, the habeas court determined: "[I]t is not reasonably possible that the jury disregarded the proper instructions given by the trial court on the specific intent required for the crimes charged because of its improper recitation of the intent to 'engage in conduct' language in its general definition of intent and its single reference thereto later in its charge." Accordingly, the habeas court concluded that Welch-Rubin's performance was not deficient in failing to raise that claim and that the petitioner did not demonstrate prejudice because he had failed to show that he would have succeeded on his direct appeal if the jury instructions had been challenged.

Our review of the record supports the habeas court's determinations. The case was tried on the theory that

the petitioner had the specific intent required for conviction of the crimes of attempted murder, conspiracy to commit murder and first degree assault. The information, which was read to the jury, alleged that he had the requisite specific intent in the commission of the charged offenses. The petitioner's defense was not that he fired the pistol inadvertently but that he had not been present at the time of the shooting. We agree with the habeas court's statement that "it is unlikely that the jury was misled" when the jury instructions are read in their entirety.[3] For the reasons articulated by the habeas court, we reject the petitioner's first claim.[4]

The petitioner's next claim is that Welch-Rubin's performance was deficient because she failed to raise, as an issue in his direct appeal, the trial court's failure to include in its jury instructions the necessary elements of the crimes of attempted murder and conspiracy to commit murder. Specifically, he claims that the trial court omitted an essential element from the charge by failing to identify the victims by name, and he cites

---

[3] "Our standard of review with regard to claims of instructional error is well established. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [T]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Where . . . the challenged jury [instruction involves] a constitutional right, the applicable standard of review is whether there is a reasonable possibility that the jury was misled in reaching its verdict." (Internal quotation marks omitted.) *State* v. *Weaving*, 125 Conn. App. 41, 51–52, 6 A.3d 203 (2010), cert. denied, 299 Conn. 929, 12 A.3d 569 (2011).

[4] The petitioner's reliance on *State* v. *DeBarros*, 58 Conn. App. 673, 755 A.2d 303, cert. denied, 254 Conn. 931, 761 A.2d 756 (2000), is misplaced. In *DeBarros*, the trial court's references to the principle of general intent were "too numerous to be rectified by the court's proper instructions"; id., 683; and its charge indicated that general intent was an element of the crime rather than merely "part of [the] general definition of intent." Id. *DeBarros*, therefore, is readily distinguishable from the present case for the reasons discussed.

*State* v. *DeJesus*, 92 Conn. App. 92, 883 A.2d 813 (2005), appeal dismissed, 282 Conn. 783, 928 A.2d 533 (2007), in support of his argument.

The petitioner was charged with participating in a "drive-by" shooting. With respect to the attempted murder charge, the information alleged that the petitioner "intentionally engaged in conduct, which, under the circumstances as he believed them to be, was a substantial step in the course of conduct planned to culminate in the death of another person, to wit: the shooting of pedestrians from a moving motor vehicle." With respect to the charge of conspiracy to commit murder, the information alleged that the petitioner "with the intent [that] the crime of murder be performed . . . agreed with one or more persons to engage in and cause the performance of such conduct, and one of them commit[ed] the overt act in pursuance of such conspiracy, to wit: the shooting of pedestrians from a motor vehicle."[5]

After distinguishing the factual circumstances in *DeJesus*, the habeas court concluded that the charges of attempted murder and conspiracy to commit murder were appropriate because "the focus of the gun assault was on unknown pedestrians. The attack was not for the purpose of targeting named individuals. . . . Unlike . . . *DeJesus*, in the present case, the state did not charge the petitioner with conspiring and attempting to kill *a certain person*. Therefore, it is not likely that the jury was misled by the trial court's failure to name a specific victim of the attempt to commit murder and conspiracy to commit murder charges while naming a specific victim for each of the assault in the first degree charges, as the jury could have found that the petitioner conspired and intended to murder either Williams or Mercado or anyone else that was present

---

[5] Williams and Mercado were identified as the victims in the counts that charged assault in the first degree.

on Willow Street at the time of the offense." (Citation omitted; emphasis in original.) The habeas court also concluded that the petitioner failed to prove any prejudice from the alleged deficient performance of appellate counsel. Our review reveals that the record clearly supports the determinations of the habeas court.

For the reasons set forth previously, we conclude that the petitioner has not demonstrated that the issues raised with regard to the court's denial of his petition for a writ of habeas corpus are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised deserved encouragement to proceed further. See *Simms* v. *Warden*, supra, 230 Conn. 616. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.