JORGE SANCHEZ *v.* COMMISSIONER
OF CORRECTION
(AC 32193)

Gruendel, Sheldon and Schaller, Js.

Argued April 26—officially released October 16, 2012

*Michael J. Culkin,* special public defender, for the appellant (petitioner).

*Linda Currie-Zeffiro,* assistant state's attorney, with whom, on the brief, were *John C. Smriga,* state's attorney, and *Gerard Eisenman,* senior assistant state's attorney, for the appellee (respondent).

SCHALLER, J. The petitioner, Jorge Sanchez, appeals from the judgment of the habeas court following the denial of his petition for certification to appeal from the judgment denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court (1) abused its discretion by denying his petition for certification to appeal and (2) erred in concluding that he failed to establish that he was denied effective assistance of counsel. We dismiss the appeal.

The following facts and procedural history are relevant to the petitioner's appeal. The petitioner was convicted of murder, conspiracy to commit murder and larceny in the first degree.[1] This court affirmed the petitioner's judgment of conviction on direct appeal. *State* v. *Sanchez*, 50 Conn. App. 145, 146, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998). In doing so, we determined that the jury reasonably could have found the following facts.

"The [petitioner] had been a member of the Latin Kings gang from approximately 1989 until 1993, when he was expelled for breaking gang rules. He sought help from his cousin, Antonio Rigual, in getting back in the gang. Rigual asked his roommate, Edwardo Ortiz, what the [petitioner] could do to regain his membership in the gang. Ortiz asked Emanuel Roman and Richard Morales, the local gang leaders, for their advice. Roman and Morales informed Ortiz that the only way the [petitioner] could regain his membership was to kill either Louis Rodriguez . . . or the victim, Angel Soto . . . . Ortiz did not relay this information to the [petitioner] until the [petitioner] asked Ortiz how he could regain his membership. Because the [petitioner] did not know [Soto], Ortiz pointed him out.

---

[1] As a result of this conviction, the petitioner received a total effective sentence of sixty years incarceration.

"With the help of others, the [petitioner] stole a red van . . . and painted it with brown primer. On the evening of April 8, 1994, the [petitioner and two other individuals] drove through Bridgeport in the van looking for the victim. They saw the victim leave [a club] and followed his vehicle until it stopped outside a restaurant. When the van stopped next to the victim's vehicle, the [petitioner] and [one of his passengers] shot [Soto] repeatedly and fatally.

"After the shooting, the [petitioner] . . . attended Rigual's birthday party, which was given by Ortiz. The [petitioner] told Ortiz and Rigual that he had just killed the victim. Rigual put his necklace of colored beads on the [petitioner], a sign of gang membership. The day after the murder, Ortiz and the [petitioner's] brother [Lester Simonetty] purchased flares, intending to burn the van, which was recovered before it was burned." Id., 146–47.

In an amended petition for a writ of habeas corpus filed November 9, 2009, the petitioner claimed that his trial counsel, Jonathan J. Demirjian, rendered ineffective assistance by failing to call Rigual and Simonetty as witnesses on his behalf. Specifically, the petitioner testified during the habeas trial that he first became aware of Rigual's and Simonetty's alleged involvement in the shooting when they were implicated by Ortiz' testimony.[2] The petitioner testified that he then informed his defense counsel that he wanted Rigual and Simonetty to testify to see if they would corroborate

---

[2] During the underlying criminal trial, Ortiz testified that he was a member of the Latin Kings and had spoken with the petitioner and Rigual regarding the petitioner regaining his membership in the gang. In addition, Ortiz testified that he witnessed Rigual reinstate the petitioner to the Latin Kings. Finally, Ortiz testified that the day after the shooting he planned to burn the van with Simonetty, but was unable to do so as the van was gone. Two months later, Ortiz was arrested in New Jersey by the Federal Bureau of Investigation, and he entered into an agreement to cooperate with federal and state authorities regarding activities of the Latin Kings.

Ortiz' statements or if they would deny involvement with or knowledge of Soto's death and, by doing so, undermine the account of events given by Ortiz. Defense counsel did not call either Rigual or Simonetty as a witness at the petitioner's trial and he testified at the habeas trial that he had no independent recollection of Rigual's or Simonetty's specific involvement with the petitioner's case or whether they were investigated.[3] Rigual and Simonetty both testified at the habeas trial that they were not members of the Latin Kings when the shooting occurred and that they had no personal knowledge about the facts and circumstances pertaining to the shooting.

The habeas court denied the petition for a writ of habeas corpus, concluding that the petitioner failed to meet his burden of proving deficient performance and prejudice. In reaching this conclusion, the habeas court specifically determined that the petitioner failed to meet his burden of proving prejudice, reasoning that a jury would be unlikely to find the testimony of either Rigual or Simonetty credible.[4] Subsequently, the habeas court

---

[3] Defense counsel testified that he was unable to recall specific details of the petitioner's case because he had been unable to review the file prior to his testimony at the habeas trial. He had not been able to locate the file in his archives.

[4] In reaching this conclusion the habeas court noted that "[t]aking the arguments of counsel for [the petitioner] at its face, the best that Simonetty and Rigual could have established in this case is motive for [the petitioner] to have committed the crimes for which he was found guilty by the jury, and as is well known, motive is not an element of the crime." From this language, the dissent posits that the habeas court found that the testimony offered through Simonetty and Rigual "would actually have harmed the petitioner's defense by giving him a motive to kill the victim." As noted previously, Simonetty and Rigual testified before the habeas court that they were not members of the Latin Kings and had no involvement in the murder of Soto. Considered in light of this testimony, it is clear that the habeas court was attempting to convey, albeit using imprecise language, that the testimony of Simonetty and Rigual *went to* the issue of motive. Their testimony, if credited, would have undercut Ortiz' testimony concerning the existence of a motive and, therefore, would not have been dispositive in the underlying criminal trial. Because we conclude that the habeas court's

denied the petition for certification to appeal. This appeal followed.

"We begin by setting forth the applicable standard of review. Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on its merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . .

"We examine the petitioner's underlying claim of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.)

determination regarding the credibility of Simonetty and Rigual is not clearly erroneous; see footnote 6 of this opinion; we need not address whether the habeas court's conclusion regarding motive was incorrect.

*Barlow* v. *Commissioner of Correction*, 131 Conn. App. 90, 93–94, 26 A.3d 123, cert. denied, 302 Conn. 937, 28 A.3d 989 (2011).

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that deficient performance prejudiced the defense." (Internal quotation marks omitted.) *McClam* v. *Commissioner of Correction*, 98 Conn. App. 432, 436, 909 A.2d 72 (2006), cert. denied, 281 Conn. 907, 916 A.2d 49 (2007). "To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong." (Internal quotation marks omitted.) *Gooden* v. *Commissioner of Correction*, 127 Conn. App. 662, 668, 14 A.3d 1066, cert. denied, 301 Conn. 913, 19 A.3d 1259 (2011). "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland* v. *Washington*, supra, 697; *State* v. *Brown*, 279 Conn. 493, 525–26, 903 A.2d 169 (2006).

In the present case, the petitioner claims that the habeas court abused its discretion in determining that Rigual and Simonetty were not credible and that, consequently, the petitioner failed to meet his burden of demonstrating to a reasonable probability that the outcome

of his trial would have been different had defense counsel called them as witnesses. We are not persuaded.

"The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Joseph* v. *Commissioner of Correction*, 117 Conn. App. 431, 433, 979 A.2d 568, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009). In the present case, the habeas court concluded that a jury would be unlikely to find Rigual and Simonetty credible as both are convicted felons and both "would have a motive to be deceptive."[5] Absent evidence demonstrating that this factual finding was clearly erroneous, we will not disturb the habeas court's conclusions in this regard.

The petitioner cites *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009), in support of his argument that defense counsel's failure to call Rigual and Simonetty as rebuttal witnesses likely affected the outcome of his criminal trial. In *Bryant*, our Supreme Court held "that in circumstances that largely involve a credibility contest . . . the testimony of neutral, disinterested witnesses is exceedingly important." (Internal quotation marks omitted.) Id., 518. In that case, the witnesses were "law-abiding citizens . . . none of the witnesses knew or were in any way acquainted or associated with the petitioner. . . . They [were] completely disinterested, observant, qualified and dispassionate witnesses." (Internal quotation marks omitted.) Id., 511

---

[5] This court has upheld the decisions and factual conclusions of habeas judges stated with similar language. See, e.g., *Barlow* v. *Commissioner of Correction*, supra, 131 Conn. App. 98 (quoting habeas court's conclusion that "the jury could have found that the petitioner conspired and intended to murder" unspecific, unnamed individuals [internal quotation marks omitted]); *Gray* v. *Commissioner of Correction*, 99 Conn. App. 444, 449, 914 A.2d 1046 (affirming habeas court's denial of writ of habeas corpus and noting habeas court's decision "that a reasonable jury could have found the petitioner guilty"), cert. denied, 282 Conn. 925, 926 A.2d 666 (2007).

n.6. The witnesses in the present case, however, are distinguishable from the witnesses in *Bryant*. The undisputed testimony presented to the habeas court establishes that Rigual and Simonetty are both related to the petitioner and have prior criminal convictions. We therefore find the petitioner's reliance on this case to be misplaced. Accordingly, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal.[6]

The appeal is dismissed.

In this opinion GRUENDEL, J., concurred.

SHELDON, J., dissenting. In this case, the majority has determined that the habeas court's denial of the

[6] The dissent's principal contention is that Rigual and Simonetty were, on balance, as credible as Ortiz. In support of that contention, the dissent asserts that their testimony "would probably have been quite helpful to the petitioner had defense counsel called them at trial." The dissent also asserts that "the mere assertion that the witnesses had motives to be deceptive is insufficient to support the court's ruling that the petitioner failed to establish prejudice . . . ." Aside from the fact that both of these assertions indicate a departure from the standard of review that we must apply, set forth in *Barlow* v. *Commissioner of Correction*, supra, 131 Conn. App. 94, we note also that "[t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Joseph* v. *Commissioner of Correction*, supra, 117 Conn. App. 433. On appeal, this court is bound by precedent to apply the clearly erroneous standard of review to determinations of credibility reached by the habeas court. See *Barlow* v. *Commissioner of Correction*, supra, 94. Although the dissent is correct to note that the habeas court did not fully iterate its reasoning on this point in its oral memorandum of decision, the record contains undisputed evidence that Rigual and Simonetty both had criminal records and are related to the petitioner. These facts provide some support for the habeas court's conclusion that the testimony offered through these witnesses was not credible. In light of this support, the habeas court's failure to credit Rigual and Simonetty was not clearly erroneous.

We note further that the dissent's proposed resolution of this appeal appears to be grounded on its disagreement with the habeas court's reasoning rather than with the judgment that it rendered. In that respect, the proposed resolution of the appeal also represents a departure from the standard of review that governs our review.

petition for certification to appeal filed by the petitioner, Jorge Sanchez, must be upheld because the court did not abuse its discretion in ruling that the petitioner failed to satisfy the prejudice prong of the controlling test for ineffective assistance of counsel set forth in *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). I respectfully disagree.

The petitioner's claim of ineffective assistance was based upon his trial lawyer's failure to call two witnesses to testify in his defense at trial. The witnesses, Antonio Rigual and Lester Simonetty, were both claimed by the petitioner to contradict key portions of the state's case against him, which was built centrally upon the testimony of Edwardo Ortiz, an admitted member of the Latin Kings gang with a lengthy criminal record, who testified against the petitioner while in custody as an informant for the Federal Bureau of Investigation (FBI).[1] According to Ortiz, the petitioner murdered the victim, Angel Soto, in order to gain readmission to the Latin Kings, which had previously expelled him. When the petitioner inquired of his cousin, Rigual, how he might gain readmission to the gang, Rigual allegedly told him, after having spoken with Ortiz, that he could gain readmission by killing one of two people with whom local gang leader Richard Morales was angry because one of them had carried on a relationship with the wife of the president of the Latin Kings while the other, Soto, had known of the relationship but did not report it. According to Ortiz, Rigual was also the person to whom the petitioner revealed, again in Ortiz' presence at Rigual's birthday party, that he had done the killing—a revelation that

---

[1] At the petitioner's trial, Ortiz admitted that after he was arrested by the FBI in New Jersey, he entered into an agreement to cooperate with federal and state authorities concerning the activities of the Latin Kings. When asked by defense counsel whether his sentence in an unrelated case depended on his cooperation and testimony in the petitioner's case, Ortiz responded in the affirmative.

reportedly prompted Rigual to give the petitioner back his beads, betokening his readmission to the gang.

Simonetty, the petitioner's brother, was claimed by Ortiz to have joined him in planning to burn the stolen and repainted motor vehicle that the petitioner had used to approach the victim by surprise in order to commit the murder. The only reason that Simonetty did not follow through with Ortiz on this plan was reportedly that the police located the stolen vehicle before he and Ortiz could torch it. When they testified at the habeas trial, both Rigual and Simonetty denied that they were members of the Latin Kings in the relevant time frame and denied that they had any knowledge of the petitioner's involvement in the killing of Soto. Rigual testified that he did not have conversations with any members of the Latin Kings about the petitioner's alleged effort to be readmitted into the gang, nor was he even aware that Soto was murdered. Simonetty testified that he did not know any members of the Latin Kings who were involved in the murder of Soto, nor did he have conversations about the murder with any such individuals.

In announcing its decision from the bench, the habeas court ruled that the plaintiff had failed to establish either the performance prong or the prejudice prong of *Strickland* for the following reasons. After assuming, arguendo, at the outset, that the performance prong of *Strickland* had been satisfied because defense counsel could not recall or explain why he had failed to call the two witnesses at trial, or even whether he had investigated them, the court then ruled that the petitioner had failed to prove prejudice because calling the witnesses to testify would actually have harmed the petitioner's defense by ascribing to him a motive to kill the victim. The court added that even if the witnesses had been called to the stand at trial, it was unlikely that the jury would have believed them because they both had

criminal records and unspecified "motive[s] to be deceptive." No explanation of these findings was ever offered. At the end of that ruling, the court concluded that, in light of the two witnesses' unhelpfulness to the defense, it was not deficient performance by defense counsel not to have called them at trial.

With due respect to the habeas court, I believe that its conclusion that the two witnesses' testimony would have hurt the petitioner's defense by giving him a motive to murder Soto is unfounded. In fact, they offered critical evidence to contradict the state's key witness in two important respects. As for Rigual, his denial of Latin Kings membership and of knowledge of the murder or of the petitioner's involvement in it directly contradicted a critical element of the state's central theory of the case: that the petitioner was motivated to kill the victim by his desire to regain membership in the Latin Kings. According to Ortiz, Rigual was a key player in the events that unfolded both because Rigual told the petitioner that he could be readmitted to the gang by killing Soto and because he made good on that representation by personally readmitting him when the petitioner informed him that he had killed Soto. If the jury had believed Rigual instead of Ortiz, or had even entertained a reasonable doubt about Ortiz' testimony based upon Rigual's contrary testimony, the petitioner's prospects at his criminal trial would have markedly improved.

As for Simonetty, although his role in the events surrounding the murder was less central than Rigual's, he still was uniquely situated to contradict a key aspect of Ortiz' story, which was that after he and Simonetty learned of the crime, they made plans together to incinerate the car. Because Simonetty was the only other person claimed by Ortiz to have been involved in the postshooting plan to torch the car, his denial of any involvement in it, or of any reason for doing so, could

also have furnished a significant basis for discrediting Ortiz' testimony.

As for the habeas court's conclusion that Rigual and Simonetty would not likely have been believed by a jury because of their criminal records, it is important to note that the essential value of their testimony to the defense in this case would have been to contradict Ortiz, an admitted member of the Latin Kings who had an extensive criminal record and pending criminal charges of his own. The critical question, moreover, is whether their relevant testimony contradicting Ortiz would have been of such significance as to raise reasonable doubt about the state's theory of the case. Here, with no admissions by the petitioner except through Ortiz, no forensic evidence tying the petitioner to the crime and no eyewitnesses against him—in essence, nothing but Ortiz' testimony to establish his guilt—the witnesses' testimony would probably have been quite helpful to the petitioner had defense counsel called them at trial.

The court also observed that both witnesses had unspecified motives to be deceptive. Here, however, where neither the true significance of the witnesses' testimony nor the insignificance, in context, of their criminal records, was properly assessed, I believe that the mere assertion that the witnesses had motives to be deceptive is insufficient to support the court's ruling that the petitioner failed to establish prejudice based upon the trial lawyer's failure to call the two witnesses at trial.[2]

---

[2] The majority suggests that, in reaching this conclusion, I have failed to pay due deference to the habeas court's determinations of credibility, which must be upheld on appeal unless they are shown to have been clearly erroneous. I respectfully disagree. The findings I object to were not in fact credibility determinations. Instead, they were assessments of the likelihood that the two witnesses' testimony would have been believed and credited by the jury had they been called to testify at trial. These findings were predicated upon the acknowledged existence of bases for impeaching the two witnesses that were identical in character to those affecting the credibil-

Although, as previously noted, the habeas court also ruled that the petitioner failed to establish the performance prong of ineffective assistance of counsel under *Strickland*, that ruling was based solely upon the court's unfounded finding that the witnesses' testimony would have harmed the petitioner by establishing a motive for him to kill the victim. I believe that that ruling fails to furnish an alternative basis for upholding the habeas court's denial of the petitioner's petition for certification to appeal under the performance prong of *Strickland*.

Having determined that the habeas court abused its discretion in ruling that the petitioner failed to satisfy the prejudice prong of *Strickland*, I next turn to a discussion of remedy. On that score, I would note that the mere fact that the court erred in rejecting the petitioner's claim does not, in itself, mean that the petitioner has met his burden of proving that his counsel was ineffective and thus that his habeas petition should be granted. Accordingly, I would reverse the habeas court's decision and remand the case for a new habeas trial on all aspects of the petitioner's ineffective assistance of counsel claim.

ity of the state's witness, Ortiz, whose testimony they would have contradicted. I find it unsupportable to conclude, on this record, that the two witnesses were not likely to have been believed solely because they, like Ortiz, had criminal records and possible motives to be deceptive.

